**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.:**

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY and
GEICO CASUALTY CO.,

      Plaintiffs,

vs.

NESTOR FERNANDEZ, M.D., P.A., NESTOR
FERNANDEZ, M.D., HEALTH
PROFESSIONAL SERVICES, INC., JAVIER
SARDUY, IVONNE DIAZ APORTELA,
AMERICAN HEALTH PROVIDERS, CORP.,
LUIS MARTINEZ, L.M.T., MEDSALUD
LLC, JUAN CARLOS HERNANDEZ
MILIAN, MULTIMED CARE, INC.,
OSVALDO DUBIEL PEREZ TURINO, IVAN
PEREZ RODRIGUEZ, BBB MEDICAL
CENTER GROUP INC, LAURA ADELA
RIQUENES, and LAURA GARCIA DIAZ,

      Defendants.

_____/

**Jury Trial Demand**

## COMPLAINT

Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), sue Defendants and allege as follows:

1.    This action seeks to recover more than $2,900,000.00 that the Defendants wrongfully obtained from GEICO by submitting thousands of fraudulent no-fault ("no-fault", "personal injury protection", or "PIP") insurance charges through Defendants Health Professional Services, Inc. ("Health Professional"), American Health Providers, Corp. ("American Health"),

Multimed Care, Inc. ("Multimed"), MedSalud LLC ("MedSalud"), BBB Medical Center Group Inc ("BBB Medical") (collectively the "Fernandez Clinics") and Nestor Fernandez M.D., P.A. ("Fernandez P.A.") (collectively the, with the Fernandez Clinics, the "Entity Defendants"), relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services, including putative initial examinations, follow up examinations, physical therapy services, and related services (collectively the "Fraudulent Services"), that purportedly were provided to Florida automobile accident victims who were eligible for coverage under GEICO no-fault insurance policies ("Insureds").

2.      In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending, fraudulent and unlawful PIP claims that Defendants have submitted through the respective Entity Defendants because:

(i)      at all relevant times, the Defendants operated in violation of Florida law, including: (a) the licensing and operating requirements set forth in the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"); (b) Florida's false and fraudulent insurance claims statute, Fla. Stat. § 817.234(7) (the "False and Fraudulent Insurance Claims Statute"); (c) Florida's Physical Therapy Practice Act, Fla. Stat. § 486.011-486.172 ("the Physical Therapy Act"); and (d) Florida's patient brokering act, Fla. Stat § 817.505 (the "Patient Brokering Act"), thereby rendering them ineligible to collect PIP insurance benefits in the first instance, and rendering their PIP insurance charges noncompensable and unenforceable;

(ii)     the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services;

(iii)    in many cases, the Fraudulent Services were never legitimately provided in the first instance;

(iv)     the Defendants' billing for the Fraudulent Services misrepresented and exaggerated the nature, extent, and results of the Fraudulent Services, in order to fraudulently and unlawfully inflate the charges submitted to GEICO;

(v)      the Defendants unlawfully billed GEICO for "physical therapy" services that were provided by massage therapists and unlicensed/unsupervised individuals; and

2

(vi)    the Defendants' billing for the Fraudulent Services misrepresented the identities of the individuals who performed or directly supervised the Fraudulent Services, and the billing was submitted in violation of the requirements set forth in Florida's Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law").

3.    As such, the Defendants do not now have – and never had – any right to be compensated for the Fraudulent Services that were billed to GEICO.

4.    The Defendants at all relevant times have known that they were not entitled to receive payment on the PIP insurance claims that they submitted to Plaintiffs because of the fraudulent and unlawful activities described herein.

5.    The chart attached hereto as Exhibits "1" – "6" sets forth a large and representative sample of the fraudulent and unlawful claims that have been identified to date that the Defendants have submitted through the respective Entity Defendants to GEICO by mail.

6.    The Defendants' interrelated fraudulent and unlawful schemes began no later than 2020, and has continued uninterrupted since that time. As a result of the Defendants' fraudulent and unlawful schemes, GEICO has incurred damages of more than $2,900,000.00.

<b><u>THE PARTIES</u></b>

**I.    <u>Plaintiffs</u>**

7.    Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

**II.    <u>Defendants</u>**

8.    Defendant Nestor Fernandez, M.D. ("Fernandez") resides in and is a citizen of Florida. Fernandez was licensed to practice medicine in Florida on April 24, 1989. Fernandez

3

falsely purported to serve as medical director at the Fernandez Clinics, purported to perform or directly supervise many of the Fraudulent Services that were billed through the Fernandez Clinics to GEICO, and used the Fernandez Clinics as vehicles to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers. Additionally, Fernandez owned Fernandez P.A., purported to perform or directly supervise many of the Fraudulent Services that were billed through Fernandez P.A. to GEICO, falsely purported to supervise the business activities at Fernandez P.A., and used Fernandez P.A. as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

9. Defendant Fernandez P.A. is a Florida professional corporation with its principal place of business in Plantation, Florida. Fernandez P.A. was incorporated in Florida in July 2018, purports to be owned by Fernandez, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

10. Defendant Health Professional is a Florida corporation with its principal place of business in Hialeah, Florida. Health Professional was incorporated in February 2010, is currently owned by Defendant Ivonne Diaz Aportela ("Aportela") and was previously owned by Defendant Javier Sarduy ("Sarduy") until September 2024, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

11. At all relevant times, Health Professional falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing requirements set forth in the Clinic Act, but in fact it was not operated in compliance with the Clinic Act, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

12. Defendant Health Professional falsely purported to have Defendant Fernandez as its medical director from October 2011 to the present.

4

13.     Defendant Sarduy resides in and is a citizen of Florida. Sarduy owned and controlled Health Professional from October 2018 to September 2024, and used Health Professional as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

14.     Defendant Aportela resides in and is a citizen of Florida. Aportela owned and controlled Health Professional from September 2024 to the present, and used Health Professional as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers

15.     Defendant American Health is a Florida corporation with its principal place of business in Miami Springs, Florida. American Health was incorporated in February 2007, is owned by Defendant Luis Martinez, L.M.T. ("Martinez"), and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

16.     At all relevant times, American Health falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing requirements set forth in the Clinic Act, but in fact it was not operated in compliance with the Clinic Act, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

17.     Defendant American Health falsely purported to have Defendant Fernandez as its medical director from October 2012 to the present.

18.     Defendant Martinez resides in and is a citizen of Florida. At all relevant times, Martinez owned and controlled American Health, and used American Health as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

19.     Defendant Multimed is a Florida corporation with its principal place of business in Hialeah, Florida. Multimed was incorporated in March 2009, is currently owned by Defendant Ivan Perez Rodriguez ("Rodriguez"), was previously owned by Defendant Osvaldo Dubiel Perez

Turino ("Turino") until February 2025, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

20.     At all relevant times, Multimed falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing requirements set forth in the Clinic Act, but in fact it was not operated in compliance with the Clinic Act, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

21.     Defendant Multimed falsely purported to have Defendant Fernandez as its medical director from January 2018 to January 2024.

22.     Defendant Rodriguez resides in and is a citizen of Florida. Rodriguez owned and controlled Multimed from February 2025 to the present, and used Multimed as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers

23.     Defendant Turino resides in and is a citizen of Florida. Turino owned and controlled Multimed from October 2017 to February 20205, and used Multimed as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

24.     Defendant MedSalud is a Florida limited liability company with its principal place of business in West Palm Beach, Florida. MedSalud was organized in June 2021, is owned by Defendant Juan Carlos Hernandez Milian ("Milian") and has Milian as its member, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

25.     At all relevant times, MedSalud falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing requirements set forth in the Clinic Act, but in fact it was not operated in compliance with the Clinic Act, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

26.     Defendant MedSalud falsely purported to have Defendant Fernandez as its medical director from May 2024 to the present.

6

27.     Defendant Milian resides in and is a citizen of Florida. At all relevant times, Milian owned and controlled MedSalud, and used MedSalud as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

28.     Defendant BBB Medical is a Florida corporation with its principal place of business in Miami Springs, Florida. BBB Medical was incorporated in May 2021, was owned by Defendants Laura Riquenes ("Riquenes") and Laura Garcia Diaz ("Diaz"), and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

29.     At all relevant times, BBB Medical falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing requirements set forth in the Clinic Act, but in fact it was not operated in compliance with the Clinic Act, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

30.     Defendant BBB Medical falsely purported to have Defendant Fernandez as its medical director from at least October 2023 to the present.

31.     Defendants Riquenes and Diaz reside in and are citizens of Florida. At all relevant times, Riquenes and Diaz owned and controlled BBB Medical, and used BBB Medical as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

**JURISDICTION AND VENUE**

32.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

33.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).

7

34.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

35.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more of Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS

### I.     Overview of Pertinent Law Governing No-Fault Insurance Reimbursement

36.     Florida has a comprehensive statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is set forth in the No-Fault Law, which requires automobile insurers to provide personal injury protection benefits ("PIP Benefits") to Insureds.

37.     Under the No-Fault Law, an Insured can assign their right to PIP Benefits to health care services providers in exchange for their services. Pursuant to a duly executed assignment, a health care services provider may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form").

38.     PIP reimbursement for health care services is normally limited to $2,500.00 per insured. However, if a physician, physician assistant, advanced practice registered nurse, or dentist determines that an injured person suffered from an "emergency medical condition", health care providers can be reimbursed up to $10,000.00 per insured for health care services.

39.     Pursuant to the No-Fault Law, an "emergency medical condition" means: "a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to

result in any of the following: (a) [s]erious jeopardy to patient health[;] (b) [s]erious impairment to bodily functions[; and/or] (c) [s]erious dysfunction of any bodily organ or part."

40.     Pursuant to the No-Fault Law, insurers such as GEICO are only required to pay PIP Benefits for "medically necessary" services. At the same time, health care services providers are only eligible to receive PIP Benefits for medically necessary services.

41.     Pursuant to the No-Fault Law, "medically necessary" means:

[A] medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

   (a)     In accordance with generally accepted standards of medical practice;

   (b)     Clinically appropriate in terms of type, frequency, extent, site, and duration; and

   (c)     Not primarily for the convenience of the patient, physician, or other health care provider.

42.     In order for a health care service to be eligible for PIP reimbursement, it not only must be "medically necessary", but also must be "lawfully" provided.

43.     Pursuant to the No-Fault Law, "lawful" or "lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment."

44.     Thus, health care services providers, including clinics licensed under the Clinic Act, may not recover PIP Benefits for health care services that were not provided in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of Florida and federal law related to the provision of the underlying services or treatment.

45.     Subject to certain limited exceptions, a license issued by the Florida Agency for Health Care Administration ("AHCA") is required in order to operate a "clinic" in Florida. See Fla. Stat. § 400.991(1)(a). The Clinic Act defines "clinic" to mean "an entity where health care

9

services are provided to individuals and which tenders charges for reimbursement for such services, including a mobile clinic and a portable equipment provider."

46. However, the Clinic Act provides an exemption from the clinic licensing requirements for:

> A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners . . . that is wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner if one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws. However, a health care practitioner may not supervise services beyond the scope of the practitioner's license … .

47. Therefore, in order for a health care practice to qualify for this "wholly owned" exemption under the Clinic Act, the licensed health care practitioner who "wholly owns" the practice has a continuing obligation to legitimately supervise the business activities of the clinic and remain legally responsible for the clinic's compliance with all federal and state laws.

48. Furthermore, in order for a health care practice to qualify for the "wholly owned" exemption from the Clinic Act's licensing requirements, the practice may not provide services that are outside of the scope of the supervising practitioner-owner's professional license.

49. Unless a health care practice qualifies for the "wholly owned" exemption from the Clinic Act's licensing requirements, or other exemptions that are inapplicable in this case, every clinic operating in Florida not only must be licensed by the AHCA, but also must appoint a physician as medical director or clinic director, who must agree in writing to accept legal responsibility for certain enumerated activities on behalf of the clinic.

50. Among other things, a clinic medical director must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action."

51.     In addition, a clinic medical director must "[e]nsure that all practitioners providing health care services or supplies to patients maintain a current active and unencumbered Florida license," and "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided."

52.     Moreover, a clinic medical director must "review any patient referral contracts or agreements executed by the clinic."

53.     What is more, pursuant to the Clinic Act, a clinic medical director must "[s]erve as the clinic records owner as defined in [Fla. Stat. §] 456.057." Pursuant to Fla. Stat. § 456.057(10), "[a]ll records owners shall develop and implement policies, standards, and procedures to protect the confidentiality and security of the medical record," and all "[e]mployees of records owners shall be trained in these policies, standards, and procedures."

54.     Furthermore, pursuant to the Clinic Act, no Florida health care clinic may operate without the legitimate, day-to-day supervision of a physician-medical director.

55.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable. A person who knowingly makes or causes to be made an unlawful charge commits theft within the meaning of, and punishable as provided in, [Fla. Stat. §] 812.014."

56.     Thus, pursuant to both the No-Fault Law and the Clinic Act, clinics that operate in violation of the Clinic Act's licensing, medical director, or other operating requirements are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided.

57.     Under the False and Fraudulent Insurance Claims Statute, it is unlawful for a health care provider to engage in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from PIP patients.

58.     Failure to make a good-faith effort to collect co-payments or deductibles renders the charges submitted by a health care provider unlawful and noncompensable.

59.     Prior to January 1, 2013, the No-Fault Law permitted health care services providers, including clinics licensed under the Clinic Act, to collect PIP Benefits for massage therapy and for services performed by massage therapists.

60.     However, the No-Fault Law was amended, effective January 1, 2013, to prohibit PIP reimbursement for massage or for any services provided by massage therapists.

61.     Pursuant to the Physical Therapy Act: (i) massage therapists may not practice physical therapy, or hold themselves out as being able to practice physical therapy, unless they have an actual license to practice physical therapy, as opposed to massage therapy; and (ii) unlicensed and unsupervised individuals may not practice physical therapy or hold themselves out as being able to practice physical therapy.

62.     Pursuant to the Physical Therapy Act and the No-Fault Law, insurers such as GEICO are not required to pay for any services performed by massage therapists or for physical therapy services that are unlawfully performed by unlicensed and unsupervised individuals.

63.     Pursuant to the No-Fault Law, insurers such as GEICO also are not required to pay PIP Benefits:

(i)     for any service or treatment that is "upcoded", meaning that it is billed using a billing code that would result in payment greater in amount than would be paid using a billing code that accurately describes the services performed;

(ii)    to any person who knowingly submits a false or misleading statement relating to the claim or charges; or

12

(iii)    with respect to a bill or statement that does not substantially meet the billing requirements set forth in the No-Fault Law.

64.    The No-Fault Law's billing requirements provide – among other things – that all PIP billing must, to the extent applicable, comply with the instructions promulgated by the Centers for Medicare & Medicaid Services ("CMS") for the completion of HCFA-1500 forms, as well as the guidelines promulgated by the American Medical Association ("AMA") in connection with the use of current procedural terminology ("CPT") codes.

65.    The instructions promulgated by CMS for the completion of HCFA-1500 forms require – among other things – that all HCFA-1500 forms set forth, in Box 31, the identity of the individual health care practitioner who personally performed or directly supervised the underlying health care services.

66.    To "directly supervise" a service, a health care practitioner "must be present in the office suite and [be] immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed." See, e.g., Medicare Claims Processing Manual, Chapter 26: Completing and Processing Form CMS-1500 Data Set.

67.    Pursuant to the No-Fault Law, insurers are not required to pay PIP Benefits to health care providers that misrepresent, in their billing, the identity of the individual licensed health care practitioners who performed or directly supervised the underlying services.

II.    **The Defendants' Interrelated Fraudulent and Unlawful Schemes**

68.    Since at least 2020, and continuing through the present day, the Defendants devised and implemented a fraudulent and unlawful scheme pursuant to which they billed GEICO millions of dollars for unlawful, medically unnecessary, illusory, and otherwise non-reimbursable services.

13

**A.**     **The Defendants' Fraudulent and Unlawful Billing for Physical Therapy Services Performed by Massage Therapists and Unlicensed/Unsupervised Individuals at the Fernandez Clinics, and Misrepresentations Regarding the Identities of the Actual Treating Practitioners**

69.     In the claims identified in Exhibits "1" – "5", the Defendants billed for a limited range of health care services through the respective Fernandez Clinics, primarily consisting of purported physical therapy services.

70.     In the claims for "physical therapy" services identified in Exhibits "1" – "5", the services unlawfully were performed – to the extent that they were performed at all – by unlicensed and unsupervised individuals, and by massage therapists, including, but not limited to, Monica Rodriguez, L.M.T. ("M. Rodriguez"), Aracely Garcia Rodriguez, L.M.T. ("Ar. Rodriguez"), Marcos Antonio Cernada, L.M.T. ("Cernada"), Alberto Morales Rodriguez, L.M.T. ("Al. Rodriguez"), Dellanida Fernandez, L.M.T. ("D. Fernandez"), Nadia Garcia, L.M.T. ("Garcia"), and Isabel Mederos, L.M.T. ("Mederos").

71.     In particular, Ar. Rodriguez was employed by Health Professional, and purported to perform many of the Fraudulent Services at Health Professional.

72.     M. Rodriguez was employed by American Health, and purported to perform many of the Fraudulent Services at American Health.

73.     D. Fernandez was employed by Multimed, and purported to perform many of the Fraudulent Services at Multimed.

74.     Garcia was employed by Multimed, and purported to perform many of the Fraudulent Services at Multimed.

75.     Cernada was employed by MedSalud, and purported to perform many of the Fraudulent Services at MedSalud.

14

76.     Al. Rodriguez was employed by MedSalud, and purported to perform many of the Fraudulent Services at MedSalud.

77.     Mederos was employed by BBB Medical, and purported to perform many of the Fraudulent Services at BBB Medical.

78.     The Defendants were aware of the fact that they could not lawfully recover PIP Benefits for services performed by massage therapists or unsupervised/unlicensed individuals.

79.     As a result, and in order to conceal the fact that M. Rodriguez, Ar. Rodriguez, Cernada, Al. Rodriguez, D. Fernandez, Garcia, Mederos, and other massage therapists and unsupervised/unlicensed individuals performed the purported physical therapy services that were unlawfully billed through the Fernandez Clinics to GEICO, the Defendants deliberately omitted any reference to M. Rodriguez, Ar. Rodriguez, Cernada, Al. Rodriguez, D. Fernandez, Garcia, Mederos, and other massage therapists and unlicensed/unsupervised individuals associated with the Fernandez Clinics on the HCFA-1500 forms that they used to bill for the putative physical therapy services.

80.     Instead, in the claims for physical therapy services identified in Exhibits "1" - "5", each of the Fernandez Clinics routinely and falsely listed Fernandez in Box 31 of the HCFA-1500 forms as the supposed provider or direct supervisor of the physical therapy services.

81.     In fact, Fernandez – who was simultaneously purporting to work at numerous health care practices at numerous locations – did not legitimately perform or directly supervise the physical therapy services in the claims identified in Exhibits "1" - "5", and could not have legitimately performed or directly supervised the physical therapy services.

82.     For example:

(i)     On January 24, 2020, American Health, Health Professional, Multimed, Martinez, Sarduy, Turino, and Fernandez billed GEICO for more than 19 hours of services provided to 10 different insureds, at three different locations, and falsely

represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 7.75 hours of services purportedly provided to four additional Insured at Doctor Max Medical Center, Corp. and Vida Medical Rehab Group, Corp. In all, GEICO received billing for at least 26.75 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on January 24, 2020.

(ii)     On January 27, 2020, American Health, Health Professional, Multimed, Martinez, Sarduy, Turino, and Fernandez billed GEICO for more than 19.75 hours of services provided to 10 different insureds, at three different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 7.5 hours of services purportedly provided to four additional Insured at Doctor Max Medical Center, Corp. and Vida Medical Rehab Group, Corp. In all, GEICO received billing for at least 27.25 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on January 27, 2020.

(iii)    On March 11, 2020, American Health, Health Professional, Multimed, Martinez, Sarduy, Turino, and Fernandez billed GEICO for more than 18.5 hours of services provided to 11 different insureds, at three different locations,  and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 10.5 hours of services purportedly provided to six different Insureds at Doctor Max Medical Center, Corp. and Family Pain & Health Center, LLC. In all, GEICO received billing for at least 26 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on March 11, 2020.

(iv)     On March 17, 2020, American Health, Health Professional, Martinez, Sarduy, and Fernandez billed GEICO for more than 10.75 hours of services provided to six different insureds, at two different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 7.5 hours of services purportedly provided to four additional Insured at Doctor Max Medical Center, Corp. In all, GEICO received billing for at least 18.25 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on March 17, 2020.

(v)      On December 14, 2022, American Health, Health Professional, Multimed, Martinez, Sarduy, Turino, and Fernandez billed GEICO for more than 20.75 hours of services provided to 13 different insureds, at three different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 3.25 hours of services purportedly provided to four additional Insured at Doctor Max Medical Center,

16

Corp. and Vida Medical Rehab Group, Corp. In all, GEICO received billing for at least 24 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on December 14, 2022.

(vi)   On December 20, 2022, American Health, Health Professional, Multimed, Martinez, Sarduy, Turino, and Fernandez billed GEICO for more than 19 hours of services provided to 12 different insureds, at three different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 1.5 hours of services purportedly provided to an additional Insured at Vida Medical Rehab, Corp. In all, GEICO received billing for at least 20.5 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on December 20, 2022.

(vii)  On December 23, 2022, American Health, Health Professional, Multimed, Martinez, Sarduy, Turino, and Fernandez billed GEICO for more than 18.5 hours of services provided to 12 different insureds, at three different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 1.75 hours of services purportedly provided to an additional Insured at Amarillo Medical Center, Inc. In all, GEICO received billing for at least 20.25 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on December 23, 2022.

(viii) On January 13, 2023, American Health, Health Professional, Multimed, Martinez, Sarduy, Turino, and Fernandez billed GEICO for more than 25.75 hours of services provided to 17 different insureds, at three different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 2.5 hours of services purportedly provided to four additional Insured at Vida Medical Rehab Group, Corp. In all, GEICO received billing for at least 28.25 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on January 13, 2023.

(ix)   On January 23, 2023, American Health, Health Professional, Martinez, Sarduy, and Fernandez billed GEICO for more than 31 hours of services provided to 19 different insureds, at two different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 1.25 hours of services purportedly provided to four additional Insured at Vida Medical Rehab Group, Corp. In all, GEICO received billing for at least 32.25 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on January 23, 2023.

17

(x)    On February 6, 2023, American Health, Health Professional, Martinez, Sarduy, and Fernandez billed GEICO for more than 21 hours of services provided to 12 different insureds, at two different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them.

(xi)   On June 16, 2023, American Health, Health Professional, Multimed, Martinez, Sarduy, Turino, and Fernandez billed GEICO for more than 17.5 hours of services provided to 10 different insureds, at three different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 1.75 hours of services purportedly provided to an additional Insured at Amarillo Medical Center, Inc. In all, GEICO received billing for at least 19.25 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on June 16, 2023.

(xii)  On January 23, 2024, American Health, Health Professional, BBB Medical, Martinez, Sarduy, Riquenes, Diaz, and Fernandez billed GEICO for more than 17.75 hours of services provided to 10 different insureds, at three different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them.

(xiii) On September 27, 2024, American Health, Health Professional, BBB Medical, MedSalud, Martinez, Aportela, Riquenes, Diaz, Milian, and Fernandez billed GEICO for more than 22.25 hours of services provided to 13 different insureds, at four different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 2.75 hours of services purportedly provided to two additional Insured at Vida Medical Rehab Group, Corp. In all, GEICO received billing for at least 25 hours of services that Fernandez purported to personally perform, or at least directly supervise, at multiple different locations on September 27, 2024.

(xiv)  On September 30, 2024, American Health, BBB Medical, MedSalud, Martinez, Aportela, Riquenes, Diaz, Milian, and Fernandez billed GEICO for more than 17.5 hours of services provided to 10 different insureds, at three different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them.

(xv)   On April 28, 2025, American Health, Health Professional, BBB Medical, Martinez, Aportela, Riquenes, Diaz, and Fernandez billed GEICO for more than 15.25 hours of services provided to 9 different insureds, at three different locations, and falsely represented in the billing that Fernandez had performed or at least directly supervised all of them. That same day, Fernandez also purported to personally perform, or at least directly supervise, an additional 3.5 hours of services purportedly provided to an additional Insured at Amarillo Medical Center, Inc. In all, GEICO received billing for at least 21.75 hours of services that Fernandez

purported to personally perform, or at least directly supervise, at multiple different locations on April 28, 2025.

83. These are only representative examples. In the claims for physical therapy services that are identified in Exhibits "1" – "5", the Defendants routinely falsely represented that Fernandez had performed – or at least directly supervised – an impossible number of physical therapy services on individual dates, considering the amounts of services he simultaneously was purporting to perform or directly supervise at the other Fernandez Clinics and other health care clinics.

84. It is impossible that Fernandez performed or directly supervised such high volumes of services, typically at multiple locations, on individual dates.

85. Furthermore, upon information and belief, the fraudulent billing for physical therapy services that the Defendants submitted through the Fernandez Clinics to GEICO constituted only a fraction of the total fraudulent billing for physical therapy services that they submitted to all of the automobile insurers in the Florida automobile insurance market.

86. GEICO is only one of the automobile insurance companies doing business in the Florida automobile insurance market.

87. It is extremely improbable, to the point of impossibility, that the Defendants only submitted fraudulent billing through the Fernandez Clinics to GEICO and that they did not simultaneously bill other automobile insurers.

88. Thus, upon information and belief, the impossible number of physical therapy services that Fernandez purported to perform or directly supervise for GEICO Insureds at the Fernandez Clinics and other clinics on individual dates of service, including but not limited to the dates of service identified above, constituted only a fraction of the total number of physical therapy services that Fernandez purported to perform or directly supervise on those same dates of service.

19

89.     In the claims for "physical therapy" services identified in Exhibits "1" – "5", the Defendants routinely falsely misrepresented that the physical therapy services were lawfully provided and reimbursable, when, in fact, they were neither lawfully provided nor reimbursable, because:

(i)     the purported physical therapy services were performed – to the extent that they were performed at all – by massage therapists and unsupervised/unlicensed individuals, in contravention of Florida law;

(ii)    the Fernandez Clinics could not lawfully recover PIP Benefits for the purported physical therapy services, because the services were performed by massage therapists and unsupervised/unlicensed individuals, and because the clinics operated in violation of Florida law; and

(iii)   the Fernandez Clinics, Sarduy, Aportela, Martinez, Rodriguez, Turino, Milian, Riquenes, Diaz, and Fernandez systematically fraudulently misrepresented and concealed the identities of the individuals who either personally performed or directly supervised the putative physical therapy services.

90.     In this context, Fernandez – who, at all relevant times, purported to be the medical director at the respective Fernandez Clinics – did not, and could not have, legitimately served as medical director for the Fernandez Clinics.

91.     Had Fernandez legitimately served as medical director at the Fernandez Clinics, he would have noted – among other things – that the physical therapy services provided at each of the Fernandez Clinics were unlawfully performed by massage therapists and unsupervised/unlicensed individuals, and unlawfully billed to GEICO.

**B.      The Defendants' Unlawful General Business Practice of Failing to Make a Good-Faith Effort to Collect Co-Payments or Deductibles from Their Patients**

92.     The Defendants knew that, if they made a legitimate, good-faith effort to collect deductibles from their patients, it would impede their ability to carry out the fraudulent and unlawful scheme described herein. For instance, if the Defendants made legitimate efforts to

collect deductibles, Insureds would be less likely to continue presenting to the Entity Defendants for medically unnecessary treatment.

93.      Accordingly, as part and parcel of their fraudulent and unlawful schemes, the Defendants unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, PIP deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

94.      In keeping with this fact, in virtually all of the thousands of bills (i.e., the HCFA-1500 forms) submitted through the Entity Defendants to GEICO for the Defendants' Fraudulent Services, the Defendants represented that they did not collect any money, whether it be a co-payment or a deductible, from the patients.

95.      In the claims identified in Exhibits "1" - "6", the Defendants routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when, in fact, they were neither lawfully provided nor reimbursable, because the Defendants engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

96.      In this context, Fernandez – who purported to be the medical director at each of the Fernandez Clinics – did not, and could not have, legitimately systematically reviewed the Fernandez Clinics' billings to ensure that they were neither fraudulent nor unlawful.

97.      Had Fernandez legitimately systematically reviewed the Fernandez Clinics' billings to ensure that they were neither fraudulent nor unlawful, he would have noted – among other things – that each of the Fernandez Clinics. unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles

21

from their patients in violation of the False and Fraudulent Insurance Claims Statute, and he would have taken immediate corrective action.

98.     What is more, Fernandez – who at all relevant times purported to own Fernandez P.A. – did not, and could not have, legitimately supervised the business activities of Fernandez P.A.

99.     Had Fernandez legitimately supervised the business activities of Fernandez P.A., he would not have permitted Fernandez P.A. to operate in violation of the False and Fraudulent Insurance Claims Statute.

**C.     Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, Turino, Fernandez, and Fernandez P.A.'s Violations of the Patient Brokering Act and the Anti-Kickback Statute**

100.    To the extent that the Insureds in the claims set forth in Exhibits "1" – "3" and "6" suffered any injuries at all in their automobile accidents, they almost always were minor soft tissue injuries such as sprains or strains. These minor soft tissue injuries did not constitute legitimate "emergency medical conditions".

101.    For instance, and in keeping with the fact that the Insureds in the claims identified in Exhibits "1" – "3" and "6" did not legitimately suffer from any "emergency medical conditions", in the substantial majority of the claims identified in Exhibits "1" – "3" and "6" the Insureds did not seek treatment at any hospital as the result of their accidents.

102.    To the limited extent that the Insureds did report to a hospital after their accidents, they almost always were briefly observed on an outpatient basis and then sent on their way after a few hours with, at most, a minor sprain, strain, or similar soft-tissue injury diagnosis.

103.    Furthermore, in most cases, contemporaneous police reports indicated that the underlying accidents involved low-speed, low-impact collisions, that the Insureds' vehicles were

22

drivable following the accidents, and that no one was seriously injured in the underlying accidents, or injured at all.

104. Even so, Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, and Turino wanted to bill GEICO and other insurers for a large amount of expensive and medically unnecessary examinations and physical therapy treatment without regard for the fact that the Insureds had not suffered any injuries that would warrant these Fraudulent Services.

105. However, Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, and Turino knew that – unless they could get a physician, physician assistant, advanced practice registered nurse, or dentist to falsely report that their patients suffered from "emergency medical conditions" – they would be limited to recovering $2,500.00 in PIP Benefits per patient, as opposed to the $10,000.00 per patient they could potentially recover if the patient had an "emergency medical condition" diagnosis.

106. At the same time, Fernandez P.A. and Fernandez wanted to submit as much PIP billing as possible for expensive, medically unnecessary, and illusory examinations, without regard for the fact that the Insureds had not suffered any injuries that would warrant the examinations.

107. However, in order to bill GEICO and other insurers for medically unnecessary and illusory examinations, Fernandez P.A. and Fernandez needed to obtain patient referrals from other health care providers, such as Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, and Turino.

108. Accordingly, Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, Turino, Fernandez P.A., and Fernandez entered into secret and unlawful patient brokering agreements, whereby, in exchange for patient referrals from Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, Rodriguez, and Turino for

23

expensive, medically unnecessary, and illusory examinations, Fernandez P.A. and Fernandez provided the Insureds with false "emergency medical condition" diagnoses, which enabled Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, and Turino to submit substantial additional PIP billing per Insured for their own medically unwarranted Fraudulent Services, consisting primarily of purported physical therapy treatments.

109. In reality, these were "pay-to-play" arrangements that caused Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, and Turino to provide medically unnecessary patient referrals to Fernandez P.A. and Fernandez in violation of the Patient Brokering Act and Anti-Kickback Statute.

110. For example:

(i) On or about January 27, 2020, Multimed and Turino referred an Insured named JE to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Multimed and Turino to submit thousands of dollars in additional PIP billing through Multimed to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(ii) On or about May 29, 2020, Multimed and Turino referred an Insured named OP to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Multimed and Turino to submit thousands of dollars in additional PIP billing through Multimed to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(iii) On or about February 15, 2021, Health Professional and Sarduy referred an Insured named AR to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Health Professional and Sarduy to submit thousands of dollars in additional PIP billing through Health Professional to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

24

(iv)   On or about May 13, 2021, American Health and Martinez referred an Insured named BD to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled American Health and Martinez to submit thousands of dollars in additional PIP billing through American Health to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(v)   On or about May 13, 2021, American Health and Martinez referred an Insured named BD to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled American Health and Martinez to submit thousands of dollars in additional PIP billing through American Health to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(vi)   On or about May 14, 2021, American Health and Martinez referred an Insured named AS to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled American Health and Martinez to submit thousands of dollars in additional PIP billing through American Health to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(vii)   On or about May 14, 2021, Multimed and Turino referred an Insured named RC to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Multimed and Turino to submit thousands of dollars in additional PIP billing through Multimed to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(viii)   On or about March 24, 2022, Health Professional and Sarduy referred an Insured named AR to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Health Professional and Sarduy to submit thousands of dollars in additional PIP billing through Health Professional to GEICO in connection with the medically

25

unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(ix)     On or about February 15, 2023, Multimed and Turino referred an Insured named MF to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Multimed and Turino to submit thousands of dollars in additional PIP billing through Multimed to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(x)      On or about February 15, 2023, Multimed and Turino referred an Insured named YC to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Multimed and Turino to submit thousands of dollars in additional PIP billing through Multimed to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(xi)     On or about February 27, 2023, Health Professional and Sarduy referred an Insured named KP to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Health Professional and Sarduy to submit thousands of dollars in additional PIP billing through Health Professional to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(xii)    On or about July 26, 2023, Health Professional and Sarduy referred an Insured named AR to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Health Professional and Sarduy to submit thousands of dollars in additional PIP billing through Health Professional to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(xiii)   On or about July 31, 2023, American Health and Martinez referred an Insured named AM to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled American Health and Martinez to submit thousands of dollars in additional PIP

26

billing through American Health to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(xiv)   On or about January 29, 2024, Health Professional and Sarduy referred an Insured named IC to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled Health Professional and Sarduy to submit thousands of dollars in additional PIP billing through Health Professional to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

(xv)    On or about July 8, 2024, American Health and Martinez referred an Insured named PC to Fernandez P.A. and Fernandez for a medically unnecessary examination, which then was billed through Fernandez P.A. to GEICO. As unlawful compensation for the referral, Fernandez P.A. and Fernandez falsely diagnosed the Insured with an "emergency medical condition", which enabled American Health and Martinez to submit thousands of dollars in additional PIP billing through American Health to GEICO in connection with the medically unnecessary physical therapy treatment and other Fraudulent Services that they purported to provide to the Insured.

111.    These are only representative examples. In the claims identified in Exhibits "1" – "3" and "6", Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, Turino, Fernandez P.A., and Fernandez routinely and unlawfully made and received patient referrals in exchange for compensation, in violation of the Patient Brokering Act and Anti-Kickback Statute.

112.    In this context, there are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

113.    An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

114.    As set forth above, in the claims identified in Exhibits "1" – "3" and "6" almost all of the Insureds whom Health Professional, Sarduy, Aportela, American Health, Martinez,

27

Multimed, Rodriguez, Turino, Fernandez P.A., and Fernandez purported to treat were involved in relatively minor accidents, and did not suffer any serious injuries in their accidents, to the extent that they suffered any injuries at all.

115.    It is highly improbable that any two or more Insureds involved in any one of the relatively minor automobile accidents in the claims identified in Exhibits "1" – "3" and "6" would: (i) suffer from injuries so similar that they would all require referrals from Health Professional, American Health and/or Multimed to Fernandez and Fernandez P.A. on or about the same date; and then (ii) receive "emergency medical condition" diagnoses from Fernandez and Fernandez P.A.

116.    It is even more improbable – to the point of impossibility – that this would occur repeatedly within the cohort of Insureds who purportedly received treatment from the Defendants.

117.    Even so – and in keeping with the fact that Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, Turino, Fernandez P.A., and Fernandez's referrals were based upon unlawful compensation, rather than medical necessity – this repeatedly occurred within the cohort of Insureds who purportedly received treatment from Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, Turino, Fernandez P.A., and Fernandez.

118.    For example:

(i)     On March 30, 2021, three Insureds – CD, YC, and EH – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not all require referrals from Health Professional to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on March 31, 2021, Health Professional and Sarduy referred each of these Insureds to Fernandez P.A. and Fernandez or

28

medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

(ii)    On April 20, 2021, two Insureds – AE and PS – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from American Health to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on April 22, 2021, American Health, and Martinez referred both of these Insureds to Fernandez P.A. and Fernandez for medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

(iii)    On July 23, 2022, two Insureds – MC and RL – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Health Professional to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on July 27, 2022, Health Professional and Sarduy referred both of these Insureds to Fernandez P.A. and Fernandez for medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

(iv)    On August 14, 2022, two Insureds – OA and AB – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Health Professional to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on August 15, 2022, Health Professional and Sarduy referred both of these Insureds to Fernandez P.A. and Fernandez for medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

(v)    On October 18, 2022, two Insureds – KN and LA – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries

in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from American Health to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on November 1, 2022, American Health and Martinez referred both of these Insureds to Fernandez P.A. and Fernandez for medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

(vi)     On December 22, 2022, three Insureds – HR, RT, and RZ – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not all require referrals from American Health to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on December 30, 2022, American Health and Martinez referred each of these Insureds to Fernandez P.A. and Fernandez for medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

(vii)    On February 3, 2023, two Insureds – IC and KP – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Health Professional to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on February 27, 2023, Health Professional and Sarduy referred both of these Insureds to Fernandez P.A. and Fernandez for medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

(viii)   On February 13, 2023, two Insureds – MF and YC – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Multimed to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on February 15, 2023, Multimed and Turino referred both of these Insureds to Fernandez P.A. and Fernandez for medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

(ix)     On March 21, 2023, two Insureds – MP and HA – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from Multimed to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on March 23, 2023, Multimed and Turino referred both of these Insureds to Fernandez P.A. and Fernandez for medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

(x)      On September 11, 2023, two Insureds – NC and YM – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates, and did not constitute "emergency medical conditions". These Insureds did not both require referrals from American Health to Fernandez P.A. and Fernandez on or about the same date after their accident. Even so, on September 13, 2023, American Health and Martinez referred both of these Insureds to Fernandez P.A. and Fernandez for medically unnecessary examinations pursuant to the Defendants' unlawful patient brokering scheme.

119.    These are only representative examples. Pursuant to the Defendants' unlawful patient brokering scheme, Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, and Turino routinely referred multiple Insureds who had been involved in the same accident to Fernandez and Fernandez P.A. for medically unnecessary examinations, despite the fact that the Insureds were differently situated and in any case did not require the Defendants' Fraudulent Services.

120.    In the claims identified in Exhibits "1" – "3" and "6", Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, Turino, Fernandez, and Fernandez P.A. routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they

31

were provided – to the extent that they were provided at all – pursuant an illegal patient brokering and kickback scheme.

**D.     The Defendants' Fraudulent Treatment and Billing Protocols**

121.    In the claims identified in Exhibits "1" – "6", almost none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced.

122.    Even so, in the claims identified in Exhibits "1" – "6", the Defendants purported to subject almost every Insured to a medically unnecessary course of "treatment" that was provided pursuant to pre-determined, fraudulent protocols designed to maximize the billing that they could submit to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

123.    The Defendants purported to provide their pre-determined fraudulent treatment protocols to the Insureds in the claims identified in Exhibits "1" – "6" without regard for the Insureds' individual symptoms or presentation, or – in most cases – the total absence of any actual continuing medical problems arising from any actual automobile accidents.

124.    Each step in the Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent PIP billing for each Insured.

125.    No legitimate physician, clinic, or other health care provider would permit the fraudulent treatment and billing protocols described below to proceed under his, her, or its auspices.

126.    The Defendants permitted the fraudulent treatment and billing protocols described below to proceed under their auspices because: (i) Health Professional, American Health,

Multimed, MedSalud, BBB Medical, and Fernandez P.A. were, at all relevant times, operating in violation of the Clinic Act, without legitimate oversight or medical directors; and (ii) the Defendants sought to profit from the fraudulent billing they submitted to GEICO and other insurers.

**1. MedSalud, Milian, Fernandez P.A. and Fernandez's Fraudulent and Unlawful Charges for Initial Examinations**

127. As a first step in their fraudulent treatment and billing protocols, MedSalud, Milian, Fernandez P.A. and Fernandez purported to provide almost every Insured in the claims identified in Exhibits "4" and "6" with an initial examination.

128. As set forth in Exhibit "4", MedSalud, Milian, and Fernandez then billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of $500.00 for each initial examination that they purported to provide.

129. As set forth in Exhibit "6", Fernandez P.A. and Fernandez then billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99204, typically resulting in a charge of between $375.00 and $415.00 for each initial examination that they purported to provide.

130. Pursuant to the American Medical Association's CPT Assistant, which governs the use of CPT codes, at all relevant times the use of CPT code 99203 to bill for an initial patient examination represented – among other things – that: (a) the patient presented with problems of moderate severity; (b) the physician or other practitioner who performed the examination spent at least 30 minutes of time performing the examination; and (c) the physician or other practitioner who performed the examination engaged in legitimate "low complexity" medical decision-making in connection with the examination.

131.    Moreover, pursuant to the CPT Assistant, at all relevant times the use of CPT code 99204 to bill for an initial patient examination represented – among other things – that: (a) the patient presented with problems of moderate to high severity; (b) the physician or other practitioner who performed the examination spent at least 45 minutes of time performing the examination; and (c) the physician or other practitioner who performed the examination engaged in legitimate "moderate complexity" medical decision-making in connection with the examination.

132.    In the claims for initial examinations identified in Exhibits "4" and "6", the charges for the initial examinations were fraudulent in that they misrepresented Fernandez P.A. and MedSalud's eligibility to collect PIP Benefits in the first instance.

133.    In fact, and as set forth herein, Fernandez P.A. and MedSalud never were eligible to collect PIP Benefits, inasmuch as they were operated in violation of Florida law.

134.    As set forth below, the charges for the initial examinations identified in Exhibits "4" and "6" also were fraudulent in that they misrepresented the nature, extent, and results of the initial examinations, and whether they were legitimately performed in the first place.

**a.      Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

135.    The CPT Assistant provides various clinical examples of moderate severity presenting problems that would support the use of CPT code 99203 to bill for an initial patient examination, namely:

(i)      Office visit for initial evaluation of a 48-year-old man with recurrent low back pain radiating to the leg. (General Surgery)

(ii)     Initial office evaluation of a 49-year-old male with nasal obstruction. Detailed exam with topical anesthesia. (Plastic Surgery)

(iii)    Initial office evaluation for diagnosis and management of painless gross hematuria in new patient, without cystoscopy. (Internal Medicine)

(iv)     Initial office visit for evaluation of a 13-year-old female with progressive scoliosis. (Physical Medicine and Rehabilitation)

34

(v)     Initial office visit with couple for counseling concerning voluntary vasectomy for sterility. Spent 30 minutes discussing procedure, risks and benefits, and answering questions. (Urology)

136.     Accordingly, pursuant to the CPT Assistant, the moderate severity presenting problems that could support the use of CPT code 99203 to bill for an initial patient examination typically are either chronic and relatively serious problems, acute problems requiring immediate invasive treatment, or issues that legitimately require physician counseling.

137.     Similarly, the CPT Assistant provides the following clinical examples of moderate to high severity presenting problems that would support the use of CPT code 99204 to bill for an initial patient examination:

(i)     Office visit for initial evaluation of a 63-year-old male with chest pain on exertion. (Cardiology/Internal Medicine)

(ii)     Initial office visit of a 50-year-old female with progressive solid food dysphagia. (Gastroenterology)

(iii)     Initial office evaluation of a 70-year-old patient with recent onset of episodic confusion. (Internal Medicine)

(iv)     Initial office visit for a 34-year-old patient with primary infertility, including counseling. (Obstetrics/Gynecology)

(v)     Initial office visit for a 7-year-old female with juvenile diabetes mellitus, new to area, past history of hospitalization times three. (Pediatrics)

(vi)     Initial office evaluation of a 70-year-old female with polyarthralgia. (Rheumatology)

(vii)     Initial office evaluation of a 50-year-old male with an aortic aneurysm with respect to recommendation for surgery. (Thoracic Surgery)

138.     Accordingly, pursuant to the CPT Assistant, the moderate to high severity presenting problems that could support the use of CPT code 99204 to bill for an initial patient examination typically are problems that pose a serious threat to the patient's health, or even the patient's life.

139.    By contrast, to the extent that the Insureds in the claims identified in Exhibits "4" and "6" had any presenting problems at all as the result of their typically-minor automobile accidents, the problems almost always minimal severity soft tissue injuries such as sprains and strains.

140.    For instance, in most of the claims identified in Exhibits "4" and "6" the Insureds did not seek treatment at any hospital as the result of their accidents. To the limited extent that the Insureds in the claims identified in Exhibits "4" and "6" did seek treatment at a hospital following their accidents, they almost always were briefly observed on an outpatient basis, and discharged with nothing more serious than a minor soft tissue injury diagnosis.

141.    Furthermore, in most of the claims identified in Exhibits "4" and "6", contemporaneous police reports indicated that the Insureds' vehicles were drivable following the accidents, and that no one was seriously injured in the accidents, or injured at all.

142.    Even so, in the claims for initial examinations identified in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez billed GEICO for the putative initial examinations using CPT codes 99203 and 99204, and thereby falsely represented that the Insureds presented with problems of moderate or moderate to high severity. In fact, the Insureds' problems were minimal severity soft tissue injuries such as sprains and strains, to the extent that they had any presenting problems as the result of any automobile accidents at all at the time of the purported examinations.

143.    For example:

(i)     On March 31, 2020, an Insured named AA was involved in an automobile accident. The contemporaneous police report indicated that AA was not injured as the result of the accident. In keeping with the fact that AA was not seriously injured, AA did not visit any hospital emergency room following the accident. To the extent that AA experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of AA by Fernandez on April 2, 2020, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(ii)    On November 3, 2020, an Insured named LM was involved in an automobile accident. The contemporaneous police report indicated that LM's vehicle was drivable following the accident. The police report further indicated that LM was not injured as the result of the accident. In keeping with the fact that LM was not seriously injured, LM did not visit any hospital emergency room following the accident. To the extent that LM experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of LM by Fernandez on November 4, 2020, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(iii)   On October 15, 2021, an Insured named JL was involved in an automobile accident. The contemporaneous police report indicated that JL's vehicle was drivable following the accident. The police report further indicated that JL was not injured as the result of the accident. In keeping with the fact that JL was not seriously injured, JL did not visit any hospital emergency room following the accident. To the extent that JL experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of JL by Fernandez on October 20, 2021, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(iv)    On June 17, 2022, an Insured named MC was involved in an automobile accident. The contemporaneous police report indicated that MC's vehicle was drivable following the accident. The police report further indicated that MC was not injured as the result of the accident. In keeping with the fact that MC was not seriously injured, MC did not visit any hospital emergency room following the accident. To the extent that MC experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of MC by Fernandez on June 21, 2022, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(v)     On October 31, 2022, an Insured named AR was involved in an automobile accident. The contemporaneous police report indicated that AR's vehicle was drivable following the accident. The police report further indicated that AR was not injured as the result of the accident. In keeping with the fact that AR was not seriously injured, AR did not visit any hospital emergency room following the accident. To the extent that AR experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of AR by Fernandez on November 1, 2022, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and

37

thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(vi)    On August 9, 2022, an Insured named RA was involved in an automobile accident. The contemporaneous police report indicated that RA's vehicle was drivable following the accident. The police report further indicated that RA was not injured as the result of the accident. In keeping with the fact that RA was not seriously injured, RA did not visit any hospital emergency room following the accident. To the extent that RA experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of RA by Fernandez on August 11, 2022, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(vii)    On May 23, 2023, an Insured named FS was involved in an automobile accident. The contemporaneous police report indicated that FS's vehicle was drivable following the accident. The police report further indicated that FS was not injured as the result of the accident. In keeping with the fact that FS was not seriously injured, FS did not visit any hospital emergency room following the accident. To the extent that FS experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of FS by Fernandez on May 26, 2023, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(viii)    On May 21, 2024, an Insured named EL was involved in an automobile accident. The contemporaneous police report indicated that EL was not injured as the result of the accident. In keeping with the fact that EL was not seriously injured, EL did not visit any hospital emergency room following the accident. To the extent that EL experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of EL at MedSalud on May 31, 2024, MedSalud, Milian, and Fernandez billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the examination involved presenting problems of moderate severity.

(ix)    On July 6, 2024, an Insured named PC was involved in an automobile accident. The contemporaneous police report indicated that PC's vehicle was drivable following the accident. The police report further indicated that PC was not injured as the result of the accident. In keeping with the fact that PC was not seriously injured, PC did not visit any hospital emergency room following the accident. To the extent that PC experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of PC by Fernandez on July 8, 2024, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(x) On August 6, 2024, an Insured named IV was involved in an automobile accident. The contemporaneous police report indicated that IV's vehicle was drivable following the accident. The police report further indicated that IV was not injured as the result of the accident. In keeping with the fact that IV was not seriously injured, IV did not visit any hospital emergency room following the accident. To the extent that IV experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of IV by Fernandez on August 7, 2024, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(xi) On November 4, 2024, an Insured named MG was involved in an automobile accident. The contemporaneous police report indicated that MG's vehicle was drivable following the accident. The police report further indicated that MG was not injured as the result of the accident. In keeping with the fact that MG was not seriously injured, MG did not visit any hospital emergency room following the accident. To the extent that MG experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of MG by Fernandez on November 12, 2024, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that the examination involved presenting problems of moderate to high severity.

(xii) On September 20, 2024, an Insured named AP was involved in an automobile accident. The contemporaneous police report indicated that AP's vehicle was drivable following the accident. The police report further indicated that AP was not injured as the result of the accident. In keeping with the fact that AP was not seriously injured, AP did not visit any hospital emergency room following the accident. To the extent that AP experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of AP at MedSalud on September 21, 2024, MedSalud, Milian, and Fernandez billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the examination involved presenting problems of moderate severity.

(xiii) On March 31, 2025, an Insured named MG was involved in an automobile accident. The contemporaneous police report indicated that MG's vehicle was drivable following the accident. The police report further indicated that MG was not injured as the result of the accident. In keeping with the fact that MG was not seriously injured, MG did not visit any hospital emergency room following the accident. To the extent that MG experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of MG at MedSalud on April 1, 2025, MedSalud, Milian, and Fernandez billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the examination involved presenting problems of moderate severity.

39

(xiv)   On April 20, 2025, an Insured named YI was involved in an automobile accident. The contemporaneous police report indicated that YI's vehicle was drivable following the accident. The police report further indicated that YI was not injured as the result of the accident. In keeping with the fact that YI was not seriously injured, YI did not visit any hospital emergency room following the accident. To the extent that YI experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of YI at MedSalud on April 22, 2025, MedSalud, Milian, and Fernandez, and Saavedra Gari billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the examination involved presenting problems of moderate severity.

(xv)   On June 6, 2025, an Insured named MC was involved in an automobile accident. The contemporaneous police report indicated that MC's vehicle was drivable following the accident. The police report further indicated that MC was not injured as the result of the accident. In keeping with the fact that MC was not seriously injured, MC did not visit any hospital emergency room following the accident. To the extent that MC experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of MC at MedSalud on June 9, 2025, MedSalud, Milian, and Fernandez billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the examination involved presenting problems of moderate severity.

144.   These are only representative examples. In the claims for initial examinations identified in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez routinely falsely represented that the Insureds presented with problems of moderate or moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99203 and 99204, because examinations billable under CPT codes 99203 and 99204 are reimbursable at higher rates than examinations involving presenting problems of low severity, minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

**b.   Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

145.   What is more, in the claims for initial examinations that are identified in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez misrepresented and exaggerated

40

the amount of time that the examining health care practitioners spent performing the purported examinations.

146.   As set forth in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez submitted virtually all of their billing for initial examinations under CPT codes 99203 and 99204, and thereby represented that the health care practitioners who purported to perform the initial examinations spent at least 30 or 45 minutes performing the putative examinations.

147.   In fact, in the claims for initial examinations identified in Exhibits "4" and "6", neither Fernandez, nor any other health care practitioner at MedSalud and Fernandez P.A., spent even 15 minutes performing the examinations, much less 30 or 45 minutes.

148.   For instance, and in keeping with the fact that the initial examinations allegedly provided through MedSalud and Fernandez P.A. did not take more than 15 minutes to perform, MedSalud, Milian, Fernadez, P.A., Fernandez, and their associates used templates in purporting to conduct the initial examinations.

149.   The templates that MedSalud, Milian, Fernadez, P.A., and Fernandez, and their associates used in purporting to provide the initial examinations set forth a very limited range of examination parameters.

150.   The only time between the examining practitioners and the Insureds that was reflected in the limited range of examination parameters consisted of brief patient interviews and limited examinations of the Insureds' musculoskeletal systems.

151.   These brief interviews and limited examinations did not require Fernandez, or any other health care practitioner associated with MedSalud and Fernandez P.A., to spend more than 15 minutes performing the purported examinations.

152.   Moreover, the purported initial examinations in the claims identified in Exhibits "4" and "6" were not legitimately performed at all, inasmuch as the outcomes of the putative

41

examinations were pre-determined to result in false soft tissue injury diagnoses and medically unnecessary treatment recommendations, regardless of the Insureds' actual individual circumstances and presentation. These false and predetermined examinations did not require the examining health care practitioners to spend more than 15 minutes performing the supposed examinations.

153. In the claims for initial examinations identified in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez routinely misrepresented the amount of time that was spent conducting the initial examinations because lengthier examinations that are billable under CPT codes 99203 and 99204 are reimbursable at higher rates than examinations that take less time to perform.

**c.    Misrepresentations Regarding the Extent of Medical Decision-Making**

154. Pursuant to the CPT Assistant, there are four potential levels of medical decision-making in which a health care practitioner can engage in connection with an initial patient examination – namely: (i) straightforward medical decision-making; (ii) low complexity medical decision-making; (iii) moderate complexity medical decision-making; and (iv) high complexity medical decision-making.

155. Pursuant to the CPT Assistant, the complexity of medical decision-making is measured by: (i) the number of diagnoses and/or management options to be considered; (ii) the amount and/or complexity of the medical records, diagnostic tests, and other information to be considered; and (iii) the risk of complications, morbidity, and mortality, as well as co-morbidities associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options.

156. Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for a patient examination represents that the physician or health care practitioner who performed the

examination engaged in legitimate "low complexity" medical decision-making in connection with the examination.

157.    For an initial patient examination to legitimately entail "low complexity" medical decision-making, the examination typically must, among other things, involve: (i) the review and analysis of some of the patient's medical records or information regarding the patient's history obtained from an independent historian; and (ii) at least some real risk of morbidity associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options for the patient.

158.    Moreover, pursuant to the CPT Assistant, the use of CPT code 99204 to bill for a patient examination represents that the physician or health care practitioner who performed the examination engaged in legitimate "moderate complexity" medical decision-making in connection with the examination.

159.    For an initial patient examination to legitimately entail "moderate complexity" medical decision-making, the examination typically must, among other things, involve: (i) chronic illness, acute illness with systemic symptoms or complications, or an undiagnosed problem with an uncertain prognosis; (ii) the review and analysis of a larger amount of the patient's medical records/history than would be required to satisfy "low complexity" medical decision-making; and (iii) at least a moderate risk of morbidity associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options for the patient.

160.    As set forth above and in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez billed GEICO for almost all of their putative initial patient examinations of the Insureds using CPT codes 99203 and 99204, and thereby falsely represented that the examining practitioners engaged in genuine low complexity medical decision-making or genuine moderate complexity medical decision-making, respectively, in connection with the initial examinations.

43

161.    In fact, and to the extent that the Insureds in the claims identified in Exhibits "4" and "6" had any presenting problems at all as the result of their minor automobile accidents, the problems almost always were minor soft tissue injuries such as sprains and strains.

162.    The diagnosis and treatment of these minor soft tissue injuries did not require any legitimate low complexity medical decision-making or any legitimate moderate complexity medical decision-making.

163.    In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

164.    Rather, in the claims for initial examinations identified in Exhibits "4" and "6": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic tests, or other information; (ii) there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) MedSalud, Fernadez, P.A., Milian, Fernandez, and their associates did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and provided substantially similar, false, objectively unverifiable soft tissue injury "diagnoses" for almost every Insured, regardless of their true individual circumstances or presentation.

165.    For example:

(i)    On March 20, 2024, an Insured named RG was involved in an automobile accident. The contemporaneous police report indicated RG's vehicle was drivable following the accident. The police report further indicated that RG was not injured as a result of the accident. In keeping with the fact that RG was not seriously injured, RG did not visit any hospital emergency room following the accident. To the extent that RG experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on August 29, 2024, Fernandez purported to conduct an initial examination of RG at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not

retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided RG with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither RG's presenting problems, nor the treatment plan provided to RG by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, RG did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Fernandez P.A. and Fernandez consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to RG. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(ii)     On August 17, 2024, an Insured named DL was involved in an automobile accident. The contemporaneous police report indicated DL's vehicle was drivable following the accident. The police report further indicated that DL was not injured as a result of the accident. In keeping with the fact that DL was not seriously injured, DL did not visit any hospital emergency room following the accident. To the extent that DL experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on August 19, 2024, Fernandez purported to conduct an initial examination of DL at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided DL with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither DL's presenting problems, nor the treatment plan provided to DL by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, DL did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Fernandez P.A. and Fernandez consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to DL. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(iii)     On August 22, 2024, an Insured named FP was involved in an automobile accident. The contemporaneous police report indicated FP's vehicle was drivable following the accident. The police report further indicated that FP was not injured as a result of the accident. In keeping with the fact that FP was not seriously injured, FP did not visit any hospital emergency room following the accident. To the extent that FP experienced any health problems at all as a result of the accident, they were of low

45

or minimal severity. Even so, on August 29, 2024, Fernandez purported to conduct an initial examination of FP at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided FP with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither FP's presenting problems, nor the treatment plan provided to FP by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, FP did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Fernandez P.A. and Fernandez consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to FP. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(iv)     On September 20, 2024, an Insured named AP was involved in an automobile accident. The contemporaneous police report indicated that AP's vehicle was drivable following the accident. The police report further indicated that AP was not injured as the result of the accident. In keeping with the fact that AP was not seriously injured, AP did not visit any hospital emergency room following the accident. To the extent that AP experienced any health issues at all as the result of the accident, they were of low or minimal severity. Even so, on September 21, 2024, an examining practitioner purported to conduct an initial examination of AP at MedSalud. To the extent that the practitioner performed the examination in the first instance, the practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the practitioner provided AP with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds, at the direction of MedSalud and Milian. Furthermore, neither AP's presenting problems, nor the treatment plan provided to AP by MedSalud, presented any risk of significant complications, morbidity, or mortality. To the contrary, AP did not need any significant treatment at all as a result of the accident, and the treatment plan provided by MedSalud consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AP. Even so, MedSalud, Milian, and Fernandez billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the practitioner engaged in some legitimate, low complexity medical decision-making during the purported examination.

(v)     On October 4, 2024, an Insured named ES was involved in an automobile accident. The contemporaneous police report indicated ES's vehicle was drivable following the accident. The police report further indicated that ES was not injured as a result

of the accident. In keeping with the fact that ES was not seriously injured, ES did not visit any hospital emergency room following the accident. To the extent that ES experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on October 7, 2024, Fernandez purported to conduct an initial examination of ES at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided ES with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither ES's presenting problems, nor the treatment plan provided to ES by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, ES did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Fernandez P.A. and Fernandez consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to ES. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(vi)     On January 18, 2025, an Insured named DT was involved in an automobile accident. The contemporaneous police report indicated DT's vehicle was drivable following the accident. The police report further indicated that DT was not injured as a result of the accident. In keeping with the fact that DT was not seriously injured, DT did not visit any hospital emergency room following the accident. To the extent that DT experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on January 21, 2025, Fernandez purported to conduct an initial examination of DT at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided DT with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither DT's presenting problems, nor the treatment plan provided to DT by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, DT did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Fernandez P.A. and Fernandez consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to DT. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(vii)   On January 28, 2025, an Insured named CR was involved in an automobile accident. The contemporaneous police report indicated CR's vehicle was drivable following the accident. The police report further indicated that CR was not injured as a result of the accident. In keeping with the fact that CR was not seriously injured, CR did not visit any hospital emergency room following the accident. To the extent that CR experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on January 31, 2025, Fernandez purported to conduct an initial examination of CR at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided CR with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither CR's presenting problems, nor the treatment plan provided to CR by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, CR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Fernandez P.A. and Fernandez consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to CR. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(viii)  On March 16, 2025, an Insured named AN was involved in an automobile accident. The contemporaneous police report indicated AN was not injured as a result of the accident. In keeping with the fact that AN was not seriously injured, AN did not visit any hospital emergency room following the accident. To the extent that AN experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on March 27, 2025, an examining practitioner purported to conduct an initial examination of AN at MedSalud. To the extent that the practitioner performed the examination in the first instance, the practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the practitioner provided AN with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds, at the direction of MedSalud and Milian. Furthermore, neither AN's presenting problems, nor the treatment plan provided to AN by MedSalud, presented any risk of significant complications, morbidity, or mortality. To the contrary, AN did not need any significant treatment at all as a result of the accident, and the treatment plan provided by MedSalud consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AN. Even so, MedSalud, Milian, and Fernandez billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented

48

that the practitioner engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ix)   On March 31, 2025, an Insured named MG was involved in an automobile accident. The contemporaneous police report indicated that MG's vehicle was drivable following the accident. The police report further indicated that MG was not injured as the result of the accident. In keeping with the fact that MG was not seriously injured, MG did not visit any hospital emergency room following the accident. To the extent that MG experienced any health issues at all as the result of the accident, they were of low or minimal severity. Even so, on April 1, 2025, an examining practitioner purported to conduct an initial examination of MG at MedSalud. To the extent that the practitioner performed the examination in the first instance, the practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the practitioner provided MG with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds, at the direction of MedSalud and Milian. Furthermore, neither MG's presenting problems, nor the treatment plan provided to MG by MedSalud, presented any risk of significant complications, morbidity, or mortality. To the contrary, MG did not need any significant treatment at all as a result of the accident, and the treatment plan provided by MedSalud consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to MG. Even so, MedSalud, Milian, and Fernandez billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the practitioner engaged in some legitimate, low complexity medical decision-making during the purported examination.

(x)   On May 4, 2025, an Insured named WE was involved in an automobile accident. The contemporaneous police report indicated WE's vehicle was drivable following the accident. The police report further indicated that WE was not injured as a result of the accident. In keeping with the fact that WE was not seriously injured, WE did not visit any hospital emergency room following the accident. To the extent that WE experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on May 5, 2025, Fernandez purported to conduct an initial examination of WE at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided WE with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither WE's presenting problems, nor the treatment plan provided to WE by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, WE did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Fernandez P.A. and Fernandez consisted of medically unnecessary

49

physical therapy services, which did not pose the least bit of risk to WE. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xi)     On May 18, 2025, an Insured named YJ was involved in an automobile accident. The contemporaneous police report indicated that YJ was not injured as a result of the accident. In keeping with the fact that YJ was not seriously injured, YJ did not visit any hospital emergency room following the accident. To the extent that YJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on May 19, 2025, Fernandez purported to conduct an initial examination of YJ at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided YJ with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither YJ's presenting problems, nor the treatment plan provided to YJ by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, YJ did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Fernandez P.A. and Fernandez consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to YJ. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xii)    On May 18, 2025, an Insured named EV was involved in an automobile accident. The contemporaneous police report indicated EV was not injured as a result of the accident. In keeping with the fact that EV was not seriously injured, EV did not visit any hospital emergency room following the accident. To the extent that EV experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on May 19, 2025, Fernandez purported to conduct an initial examination of EV at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided EV with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither EV's presenting problems, nor the treatment plan provided to EV by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, EV did not need any significant treatment at all as a result of the accident, and the treatment plan

50

provided by Fernandez P.A. and Fernandez consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to EV. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xiii)   On May 26, 2025, an Insured named ES was involved in an automobile accident. The contemporaneous police report indicated ES was not injured as a result of the accident. In keeping with the fact that ES was not seriously injured, ES did not visit any hospital emergency room following the accident. To the extent that ES experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on May 30, 2025, Fernandez purported to conduct an initial examination of ES at Fernandez P.A. To the extent that Fernandez performed the examination in the first instance, Fernandez did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Fernandez did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Fernandez provided ES with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds. Furthermore, neither ES's presenting problems, nor the treatment plan provided to ES by Fernandez P.A. and Fernandez, presented any risk of significant complications, morbidity, or mortality. To the contrary, ES did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Fernandez P.A. and Fernandez consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to ES. Even so, Fernandez P.A. and Fernandez billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Fernandez engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xiv)   On May 28, 2025, an Insured named BL was involved in an automobile accident. The contemporaneous police report indicated BL's vehicle was drivable following the accident. The police report further indicated that BL was not injured as a result of the accident. In keeping with the fact that BL was not seriously injured, BL did not visit any hospital emergency room following the accident. To the extent that BL experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, on June 4, 2025, an examining practitioner purported to conduct an initial examination of BL at MedSalud. To the extent that the practitioner performed the examination in the first instance, the practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the practitioner provided BL with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds, at the direction of MedSalud and Milian. Furthermore, neither BL's presenting problems, nor the treatment plan

51

provided to BL by MedSalud, presented any risk of significant complications, morbidity, or mortality. To the contrary, BL did not need any significant treatment at all as a result of the accident, and the treatment plan provided by MedSalud consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to BL. Even so, MedSalud, Milian, and Fernandez billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the practitioner engaged in some legitimate, low complexity medical decision-making during the purported examination.

(xv)   On June 6, 2025, an Insured named MC was involved in an automobile accident. The contemporaneous police report indicated that MC's vehicle was drivable following the accident. The police report further indicated that MC was not injured as the result of the accident. In keeping with the fact that MC was not seriously injured, MC did not visit any hospital emergency room following the accident. To the extent that MC experienced any health issues at all as the result of the accident, they were of low or minimal severity. Even so, on June 9, 2025, an examining practitioner purported to conduct an initial examination of MC at MedSalud. To the extent that the practitioner performed the examination in the first instance, the practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the practitioner provided MC with the false list of objectively unverifiable soft tissue injury "diagnoses" that he provided to other Insureds, at the direction of MedSalud and Milian. Furthermore, neither MC's presenting problems, nor the treatment plan provided to MC by MedSalud, presented any risk of significant complications, morbidity, or mortality. To the contrary, MC did not need any significant treatment at all as a result of the accident, and the treatment plan provided by MedSalud consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to MC. Even so, MedSalud, Milian, and Fernandez billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the practitioner engaged in some legitimate, low complexity medical decision-making during the purported examination.

166.   These are only representative examples. In the claims for initial examinations identified in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez routinely falsely represented that the examinations entailed legitimate, low or moderate-complexity medical decision-making, when in fact they did not.

167.   There are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

52

168. An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

169. As set forth above, in the claims identified in Exhibits "4" and "6", the Insureds who purportedly received treatment from MedSalud, Milian, Fernadez, P.A., and Fernandez were involved in relatively minor accidents.

170. It is improbable that any two or more Insureds involved in any one of the minor automobile accidents in the claims identified in Exhibits "4" and "6" would suffer substantially identical injuries as the result of their accidents, or require a substantially identical course of treatment.

171. It likewise is improbable that two or more Insureds involved in any one of the minor automobile accidents in the claims identified in Exhibits "4" and "6" would present for an initial examination with substantially identical symptoms, and receive substantially identical diagnoses, on or about the exact same date after their underlying automobile accident.

172. It is even more improbable – to the point of impossibility – that this would occur with great frequency within a cohort of patients treating at individual practices such as MedSalud and Fernandez P.A.

173. Even so, in keeping with the fact that their putative "diagnoses" were false, and in keeping with the fact that their putative initial examinations involved no actual medical decision-making at all, MedSalud, Milian, Fernadez, P.A., and Fernandez – and their associates working under their direction – frequently issued substantially identical, false "diagnoses", on or around the same date, to more than one Insured involved in a single accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that they were differently situated.

174.    For example:

(i)     On August 9, 2022, two Insureds – EF and RA – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, August 11, 2022. EF and RA were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EF and RA suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused EF and RA to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(ii)    On March 21, 2023, two Insureds – HA and MP – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, March 23, 2023. HA and MP were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that HA and MP suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused HA and MP to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(iii)   On March 9, 2024, two Insureds – RG and TU – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, March 11, 2024. RG and TU were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that RG and TU suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused RG and TU to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(iv)    On March 20, 2024, two Insureds – JA and RG – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, March 21, 2024. JA and RG were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JA and RG suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused JA and RG to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(v)    On April 18, 2024, two Insureds – CD and SL – were involved in the same automobile accident. Thereafter, both Insureds presented at MedSalud for initial examinations on the exact same date, April 20, 2024. CD and SL were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that CD and SL suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, MedSalud, Milian, and Fernandez caused CD and SL to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(vi)    On May 21, 2024, two Insureds – EL and YA – were involved in the same automobile accident. Thereafter, both Insureds presented at MedSalud for initial examinations on the exact same date, May 31, 2024. EL and YA were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EL and YA suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, MedSalud, Milian, and Fernandez caused EL and YA to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(vii)    On August 6, 2024, two Insureds – IV and YV – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, August 7, 2024. IV and YV were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that IV and YV suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused IV and YV to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(viii)    On August 16, 2024, two Insureds – MM and YG – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, August 19, 2024. MM and YG were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MM and YG suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused MM and YG to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(ix)    On August 17, 2024, three Insureds – CD, DL, and EF – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, August 19, 2024. CD, DL, and EF were

different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that CD, DL, and EF suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused CD, DL, and EF to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to each of them.

(x)    On September 23, 2024, two Insureds – AZ and JM – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, September 24, 2024. AZ and JM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AZ and JM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused AZ and JM to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xi)    On January 18, 2025, two Insureds – DT and MR – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, January 21, 2025. DT and MR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that DT and MR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused DT and MR to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xii)    On March 30, 2025, two Insureds – AG and BD – were involved in the same automobile accident. Thereafter, all three Insureds presented at Fernandez P.A. for initial examinations on the exact same date, March 31, 2025. AG and BD were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AG and BD suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused AG and BD to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xiii)    On March 31, 2025, two Insureds – OH and YG – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, April 1, 2025. OH and YG were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that OH and YG suffered any injuries at all in their accident, the injuries

56

were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused OH and YG to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xiv) On May 4, 2025, two Insureds – ID and WB – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, May 5, 2025. ID and WB were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that ID and WB suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused ID and WB to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xv) On May 22, 2025, two Insureds – AR and IM – were involved in the same automobile accident. Thereafter, both Insureds presented at Fernandez P.A. for initial examinations on the exact same date, May 23, 2025. AR and IM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AR and IM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Fernandez P.A. and Fernandez caused AR and IM to be provided with false, substantially similar soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

175. These are only representative examples. In the claims for initial examinations that are identified in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez frequently caused the issuance of substantially similar "diagnoses", on or about the same date, to more than one Insured involved in a single accident, and recommended a substantially similar course of medically unnecessary "treatment" to the Insureds, despite the fact that the Insureds were differently situated and, in any case, did not require the treatment.

176. MedSalud, Milian, Fernadez, P.A., and Fernandez routinely caused these false "diagnoses" to be included in their initial examination reports in order to create the false impression that the initial examinations required some legitimate medical decision-making, and in

order to create a false justification for the other Fraudulent Services that MedSalud, Milian, Fernadez, P.A., and Fernandez purported to provide to the Insureds.

177.    In the claims for initial examinations identified in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez routinely falsely represented that the putative examinations involved legitimate, low or moderate complexity medical decision making in order to create a false basis to bill for the initial examinations under CPT code 99203 and 99204, because examinations billable under CPT codes 99203 and 99204 is  reimbursable at a higher rate than examinations or examinations that do not require any complex medical decision-making at all.

178.    In this context, Fernandez – who at all relevant times purported to own Fernandez P.A. and to serve as the medical director of MedSalud – did not legitimately supervise the business activities of Fernandez P.A. or perform the required duties of a clinic medical director at MedSalud.

179.    Had Fernandez actually supervised the business activities of Fernandez P.A. or perform the required duties of a clinic medical director at MedSalud, he would – among other things – not have permitted MedSalud and Fernandez P.A.'s billing to fraudulently misrepresent that the putative initial examinations were legitimately and lawfully performed.

180.    In the claims for initial examinations identified in Exhibits "4" and "6", MedSalud, Milian, Fernadez, P.A., and Fernandez routinely fraudulently misrepresented that the examinations were lawfully provided and eligible for PIP reimbursement, when in fact they were neither lawfully provided nor reimbursable, because:

(i)    the putative examinations were illusory, with outcomes that were pre-determined to result in substantially similar, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)    the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and

(iii)   the Defendants were never eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they operated in violation of Florida law.

**2.      Fernandez P.A. and Fernandez's Fraudulent and Unlawful Charges for Follow-Up Examinations at Fernandez P.A.**

181.    In addition to their fraudulent initial examinations, Fernandez P.A. and Fernandez often purported to subject the Insureds in the claims identified in Exhibit "6" to one or more fraudulent follow-up examination(s) during the course of their fraudulent treatment and billing protocol.

182.    As set forth in Exhibit "6", Fernandez P.A. and Fernandez then billed the follow-up examinations to GEICO under CPT codes 99214 and 99215.

183.    In the claims for follow-up examinations identified in Exhibit "6", the charges for the follow-up examinations were fraudulent in that they misrepresented Fernandez P.A. and Fernandez's eligibility to collect PIP Benefits in the first instance.

184.    In fact, and as set forth herein, Fernandez P.A. and Fernandez never were eligible to collect PIP Benefits, inasmuch as they operated in violation of Florida law.

185.    As set forth below, Fernandez P.A. and Fernandez's charges for the follow-up examinations identified in Exhibit "6" were also fraudulent in that they misrepresented the nature, extent, and results of the purported follow-up examinations.

**a.      Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

186.    Pursuant to the CPT Assistant, the use of CPT code 99214 to bill for a follow-up examination typically represents – among other things – that the patient presented with problems of moderate to high severity at the time of the examination.

59

187.    The CPT Assistant provides various clinical examples of moderate to high severity presenting problems that would support the use of CPT code 99214 to bill for a follow-up patient examination, namely:

(i)     Office visit for a 68-year-old male with stable angina, two months post myocardial infarction, who is not tolerating one of his medications. (Cardiology)

(ii)    Office evaluation of 28-year-old patient with regional enteritis, diarrhea, and low-grade fever, established patient. (Family Medicine/Internal Medicine)

(iii)   Weekly office visit for 5FU therapy for an ambulatory established patient with metastatic colon cancer and increasing shortness of breath. (Hematology/Oncology)

(iv)    Office visit with 50-year-old female, established patient, diabetic, blood sugar controlled by diet. She now complains of frequency of urination and weight loss, blood sugar of 320 and negative ketones on dipstick. (Internal Medicine)

(v)     Follow-up visit for a 60-year-old male whose post-traumatic seizures have disappeared on medication, and who now raises the question of stopping the medication. (Neurology)

(vi)    Follow-up office visit for a 45-year-old patient with rheumatoid arthritis on gold, methotrexate, or immunosuppressive therapy. (Rheumatology)

(vii)   Office evaluation on new onset RLQ pain in a 32-year-old woman, established patient. (Urology/General Surgery/Internal Medicine/Family Medicine)

(viii)  Office visit with a 63-year-old female, established patient, with familial polyposis, after a previous colectomy and sphincter sparing procedure, now with tenesmus, mucus, and increased stool frequency. (Colon and Rectal Surgery)

188.    Accordingly, pursuant to the CPT Assistant, the moderate to high severity presenting problems that could support the use of CPT code 99214 to bill for a follow-up patient examination typically are problems that pose a serious threat to the patient's health, or even the patient's life.

189.    Pursuant to the CPT Assistant, the use of CPT code 99215 to bill for a follow-up patient examination typically represents that the Insured presented with problems of moderate to high severity.

190.    The CPT Assistant provides various clinical examples of moderate to high severity presenting problems that would support the use of CPT code 99215 to bill for a follow-up patient examination, namely:

(i)     Office visit with 30-year-old male, established patient 3-month history of fatigue, weight loss, intermittent fever, and presenting with diffuse adenopathy and splenomegaly. (Family Medicine)

(ii)    Office evaluation and discussion of treatment options for a 68-year-old male with a biopsy-proven rectal carcinoma. (General Surgery)

(iii)   Office visit for restaging of an established patient with new lymphadenopathy one year post therapy for lymphoma. (Hematology/Oncology)

(iv)    Follow-up office visit for a 65-year old male with a fever of recent onset while on outpatient antibiotic therapy for endocarditis. (Infectious Disease)

(v)     Office visit for evaluation of recent onset syncopal attacks in a 70-year-old woman, established patient. (Internal Medicine)

(vi)    Follow-up office visit for a 75-year-old patient with ALS (amyotrophic lateral sclerosis), who is no longer able to swallow. (Neurology)

(vii)   Follow-up visit, 40-year-old mother of 3, with acute rheumatoid arthritis, anatomical Stage 3, ARA function Class 3 rheumatoid arthritis, and deteriorating function. (Rheumatology)

191.    Accordingly, pursuant to the CPT Assistant, the moderate to high severity presenting problems that could support the use of CPT code 99215 to bill for a follow-up patient examination typically are problems that pose a critical threat to the patient's health, and even the patient's life.

192.    However, to the extent that the Insureds in the claims identified in Exhibit "6" suffered any injuries at all in their automobile accidents, the injuries were virtually always minor soft tissue injures such as sprains and strains, which were of minimal severity, even at their onset.

193.    Minor soft tissue injuries such as sprains and strains virtually always resolve after a short course of conservative treatment or no treatment at all. By the time the Insureds in the

claims identified in Exhibit "6" presented for their putative follow-up examinations – typically weeks or months after their minor accidents – the Insureds either did not have any genuine presenting problems at all as a result of their minor automobile accidents, or else their presenting problems were minimal.

194.    Even so, in the claims for the follow-up examinations under identified in Exhibit "6", Fernandez P.A. and Fernandez represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds' problems were minimal severity soft tissue injures such as sprains and strains, to the limited extent that they had any presenting problems at all at the time of the purported examinations.

195.    In the claims for follow-up examinations identified in Exhibit "6", Fernandez P.A. and Fernandez routinely falsely represented that the Insureds presented with problems of moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99214 and 99215, because examinations billable under CPT codes 99214 and 99215 are reimbursable at higher rates than examinations involving presenting problems of minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that Fernandez P.A. and Fernandez purported to provide to the Insureds.

**b.    Misrepresentations Regarding the Nature, Extent, and Results of the Follow-Up Examinations**

196.    Moreover, pursuant to the CPT Assistant, the use of CPT code 99214 to bill for a follow-up examination represents – among other things – that the examining practitioner performed at least two of the following three components during the examination: (i) took a "detailed" patient history; (ii) conducted a "detailed" physical examination; and (iii) engaged in medical decision-making of "moderate complexity".

197.     Pursuant to the CPT Assistant, the use of CPT code 99215 to bill for a follow-up examination represents – among other things – that the examining practitioner performed at least two of the three following components during the examination: (i) took a "comprehensive" patient history; (ii) conducted a "comprehensive" physical examination; and (iii) engaged in medical decision-making of "high complexity".

198.     Though Fernandez P.A. and Fernandez routinely billed for the purported follow-up examinations using CPT codes 99214 and 99215, neither Fernandez nor any other practitioner at Fernandez P.A. took any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

199.     Rather, in the claims identified in Exhibit "6", following the purported follow-up examinations, Fernandez P.A. and Fernandez simply: (i) caused the Insureds to receive substantially the same false, boilerplate "diagnoses" as they had received during their purported initial examination; and either (ii) caused the Insureds to be referred for even more medically unnecessary Fraudulent Services, despite the fact that the Insureds purportedly already had received extensive physical therapy services that supposedly had not been successful in resolving their purported pain symptoms; or (iii) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

200.     The putative "follow-up" examinations that Fernandez P.A. and Fernandez purported to provide the Insureds in the claims identified in Exhibit "6" therefore were medically useless, and played no legitimate role in the treatment or care of the Insureds, because the putative "results" of the examinations were pre-determined to comport with the medically unnecessary treatment plan that was pre-determined for each Insured from the moment they walked into the Defendants' offices.

63

201.    In the claims for follow-up examinations identified in Exhibit "6", Fernandez P.A. and Fernandez fraudulently misrepresented that the examinations were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)      the putative examinations were illusory, with outcomes that were pre-determined to result in substantially similar, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)     the charges for the putative examinations misrepresented the nature and extent of the examinations; and

(iii)    Fernandez P.A. and Fernandez were never eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they operated in violation of Florida law.

**3.      The Fraudulent and Unlawful Charges for Physical Therapy Services at the Fernandez Clinics**

202.    In addition to their fraudulent and unlawful initial examinations and follow-up examinations, the Defendants almost always purported to subject each of the Insureds in the claims identified in Exhibits "1" – "5" to months of medically unnecessary physical therapy treatment.

203.    In the claims identified in Exhibit "1", Health Professional, Sarduy, Aportela, and Fernandez typically billed the purported physical therapy services to GEICO under:

(i)      CPT code 97110, for putative therapeutic exercises, typically resulting in a charge of $150.00 for each round of therapeutic exercises they purported to provide;

(ii)     CPT code 97140 for putative manual therapy, typically resulting in a charge of $140.00 for each round of manual therapy they purported to provide;

(iii)    CPT code 97035 for putative therapeutic ultrasounds, typically resulting in a charge of $30.00 for each round of therapeutic ultrasound they purported to provide;

(iv)     CPT code 97112 for putative neuromuscular reeducation, typically resulting in a charge of $75.00 for each round of neuromuscular reeducation they purported to provide;

(v)      CPT code 97010 for putative hot/cold pack treatment, typically resulting in a charge of $15.00 for each round of hot/cold pack treatment they purported to provide; and

64

(vi)    HCCPCS code G0283 for putative electric stimulation treatments, typically resulting in a charge of $35.00 for each round of electrical stimulation they purported to provide.

204.    In the claims identified in Exhibit "2", American Health, Martinez, and Fernandez typically billed the purported physical therapy services to GEICO under:

(i)    CPT code 97110, for putative therapeutic exercises, typically resulting in a charge of $140.00 for each round of therapeutic exercises they purported to provide;

(ii)    CPT code 97530 for putative direct therapeutic activities, typically resulting in a charge of $75.00 for each round of direct therapeutic activities they purported to provide;

(iii)    CPT code 97112 for putative neuromuscular reeducation, typically resulting in a charge of $75.00 for each round of neuromuscular reeducation they purported to provide;

(iv)    CPT code 97012, for putative mechanical traction therapy, typically resulting in a charge of $35.00 for each round of mechanical traction they purported to provide;

(v)    CPT code 97035 for putative therapeutic ultrasounds, typically resulting in a charge of $35.00 for each round of therapeutic ultrasound they purported to provide;

(vi)    CPT code 97032 for putative manual electric stimulation, typically resulting in a charge of $80.00 for each round of manual electric stimulation treatment they purported to provide;

(vii)    CPT code 97010 for putative hot/cold pack treatment, typically resulting in a charge of $20.00 for each round of hot/cold pack treatment they purported to provide;

(viii)    CPT code 97039 for putative unlisted physical medicine and rehabilitation modalities, typically resulting in a charge of $35.00 for each unlisted physical medicine and rehabilitation modalities they purported to provide;

(ix)    CPT code 97014 for putative electric stimulation treatment, typically resulting in a charge of $30.00 for each round of electric stimulation treatment they purported to provide; and

(x)    CPT code 97026 for putative infrared light therapy, typically resulting in a charge of $35.00 for each round of infrared light therapy they purported to provide.

205.    In the claims identified in Exhibit "3", Multimed, Rodriguez, Turino, and Fernandez typically billed the purported physical therapy services to GEICO under:

65

(i)    CPT code 97110, for putative therapeutic exercises, typically resulting in a charge of between $65.80 and $131.60 for each round of therapeutic exercises they purported to provide;

(ii)    CPT code 97039 for putative unlisted physical medicine and rehabilitation modalities, typically resulting in a charge of $30.00 for each unlisted physical medicine and rehabilitation modalities they purported to provide;

(iii)    CPT code 97140 for putative manual therapy, typically resulting in a charge of $117.48 for each round of manual therapy they purported to provide;

(iv)    CPT code 97032 for putative manual electric stimulation, typically resulting in a charge of $40.00 for each round of manual electric stimulation treatment they purported to provide;

(v)    CPT code 97112 for putative neuromuscular reeducation, typically resulting in a charge of $60.00 for each round of neuromuscular reeducation they purported to provide;

(vi)    CPT code 97034 for putative contrast baths, typically resulting in a charge of $47.00 for each round of contrast baths they purported to provide; and

(vii)    CPT code 97035 for putative therapeutic ultrasounds, typically resulting in a charge of $48.00 for each round of therapeutic ultrasound they purported to provide.

206.    In the claims identified in Exhibit "4", MedSalud, Milian, and Fernandez typically billed the purported physical therapy services to GEICO under:

(i)    CPT code 97530 for putative direct therapeutic activities, typically resulting in a charge of $177.96 for each round of direct therapeutic activities they purported to provide;

(ii)    CPT code 97010 for putative hot/cold pack treatment, typically resulting in a charge of $32.50 for each round of hot/cold pack treatment they purported to provide;

(iii)    CPT code 97112 for putative neuromuscular reeducation, typically resulting in a charge of $143.00 for each round of neuromuscular reeducation they purported to provide;

(iv)    CPT code 97032 for putative manual electric stimulation, typically resulting in a charge of $31.74 for each round of manual electric stimulation treatment they purported to provide;

(v)    CPT code 97012, for putative mechanical traction therapy, typically resulting in a charge of $66.30 for each round of mechanical traction they purported to provide; and

(vi)    CPT code 97110, for putative therapeutic exercises, typically resulting in a charge of $130.00 for each round of therapeutic exercises they purported to provide.

207.    In the claims identified in Exhibit "5", BBB Medical, Diaz, Riquenes, and Fernandez typically billed the purported physical therapy services to GEICO under:

(i)    CPT code 97530 for putative direct therapeutic activities, typically resulting in a charge of $154.80 for each round of direct therapeutic activities they purported to provide;

(ii)    CPT code 97035 for putative therapeutic ultrasounds, typically resulting in a charge of $60.00 for each round of therapeutic ultrasound they purported to provide;

(iii)    CPT code 97010 for putative hot/cold pack treatment, typically resulting in a charge of $20.00 for each round of hot/cold pack treatment they purported to provide;

(iv)    CPT code 97140 for putative manual therapy, typically resulting in a charge of $124.00 for each round of manual therapy they purported to provide;

(v)    CPT code 97012, for putative mechanical traction therapy, typically resulting in a charge of $70.00 for each round of mechanical traction they purported to provide;

(vi)    CPT code 97032 for putative manual electric stimulation, typically resulting in a charge of $109.32 for each round of manual electric stimulation treatment they purported to provide;

(vii)    CPT code 97112 for putative neuromuscular reeducation, typically resulting in a charge of $143.00 for each round of neuromuscular reeducation they purported to provide;

(viii)    CPT code 97034 for putative contrast baths, typically resulting in a charge of $38.25 for each round of contrast baths they purported to provide; and

(ix)    CPT code 97110, for putative therapeutic exercises, typically resulting in a charge of $140.00 for each round of therapeutic exercises they purported to provide.

208.    In the claims for purported physical therapy services identified in Exhibits "1" – "5", the charges for the physical therapy services were fraudulent in that they misrepresented the Defendants' eligibility to collect PIP Benefits in the first instance.

209.    In fact, and as set forth above, the Defendants never were eligible to collect PIP Benefits, because of their fraudulent and unlawful activities.

210. Moreover, and as set forth herein, in the claims for purported physical therapy services identified in Exhibits "1" – "5", the charges for the physical therapy services were fraudulent and unlawful in that the services were performed – to the extent that they were performed at all, by massage therapists and unlicensed/unsupervised individuals, and because the billing misrepresented the identities of the actual treating practitioners.

211. What is more, in a legitimate clinical setting, the individual physical therapy and chiropractic services that are provided to an individual patient should be tailored to that patient's individual circumstances and presentation.

212. In keeping with the fact that the purported physical therapy services that were billed through the Fernandez Clinics to GEICO were not medically necessary, the Fernandez Clinics did not tailor the physical therapy and chiropractic services they purported to provide to each Insured's individual circumstances and presentation.

213. There are a large number of individual types of physical therapy and chiropractic services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

214. However, the Defendants routinely purported to provide the same handful of physical therapy and chiropractic "treatments" to the Insureds in the claims identified in Exhibits "1" – "5", on substantially the same schedule, without regard for the Insureds' individual circumstances.

215. In the claims for physical therapy services identified in Exhibits "1" – "5", Defendants routinely fraudulently misrepresented that the services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the services were medically unnecessary, and were provided without regard for the Insureds' true individual circumstances and presentation;

68

(ii)    the services were performed, to the extent that they were performed at all, by massage therapists and unlicensed/unsupervised individuals, and the billing for the services misrepresented the identities of the actual treating practitioners; and

(iii)    the Defendants never were eligible to collect PIP Benefits in connection with the services in the first instance, inasmuch as they operated in violation of Florida law.

**4.    The Fraudulent Charges for PENS Treatment at Health Professional**

216.    As part of their fraudulent treatment protocols, Health Professional, Sarduy, Aportela, and Fernandez purported to provide many Insureds with a large number of medically-unnecessary percutaneous electrical nerve stimulation ("PENS") treatments.

217.    In the claims identified in Exhibit "1" Health Professional, Sarduy, Aportela, and Fernandez then typically billed the PENS treatments to GEICO under CPT code 64999, typically resulting in charges of $800.00, per Insured, for each date of service on which they purported to provide the PENS treatment.

218.    Like all of the other Fraudulent Services that Health Professional, Sarduy, Aportela, and Fernandez purported to provide, the charges for the PENS treatments were fraudulent in that they falsely represented that Health Professional, Sarduy, Aportela, and Fernandez were entitled to payment in the first place, when in fact they were not because they operated in violation of Florida law.

219.    The charges for the PENS treatments also were fraudulent in that they were medically unnecessary and illusory.

220.    In a legitimate clinical setting, PENS is a procedure that combines the features of electro-acupuncture and transcutaneous electrical nerve stimulation, whereby electrical current is applied through the skin to provide patients with pain control. PENS treatments are administered through fine needle-like electrodes that are placed in close proximity to the painful area and stimulate peripheral sensory nerves in the soft tissue.

221.	According to guidelines published by CMS, if pain is effectively controlled through PENS, then implantation of electrodes is warranted.

222.	CMS further instructs that physicians generally should be able to determine whether a patient is likely to derive a significant therapeutic benefit from continuing use of implanted electrodes within a one-month trial period.

223.	CMS further instructs that a patient can be taught how to utilize implanted electrodes and, once this is accomplished, can use them safely and effectively without physician supervision. Consequently, it is inappropriate for a patient to visit his/her physician, physical therapist, or an outpatient clinic on a continuing basis for treatment of pain with PENS treatments.

224.	Even so, Health Professional, Sarduy, Aportela, and Fernandez routinely purported to provide large numbers of medically unnecessary PENS treatments to Insureds on an outpatient basis, in order to maximize the amount of fraudulent and unlawful billing they could submit to GEICO and other insurers.

225.	Moreover, to the extent that Health Professional, Sarduy, Aportela, and Fernandez actually provided any electrical stimulation treatments to Insureds in the first instance, the treatments consisted of ordinary electrical stimulation, not legitimate PENS treatments.

226.	Electrical stimulation treatments are billable at a much lower rate than PENS treatments.

227.	Health Professional, Sarduy, Aportela, and Fernandez deliberately misrepresented the electrical stimulation treatments they purported to provide to be PENS treatments in a calculated attempt to overcharge GEICO for the electrical stimulation treatments.

**E.      The Unlawful Operation of the Entity Defendants in Violation of the Clinic Act**

**1.      The Operation of the Fernandez Clinics in Violation of the Clinic Act**

228.    The Fernandez Clinics were "clinics" within the meaning of the Clinic Act, in that they were entities "where health care services are provided to individuals and which tender[ed] charges for reimbursement for such services".

229.    However, the Fernandez Clinics operated in violation of the Clinic Act, in that they never had legitimate medical directors who actually performed the duties required by the Clinic Act.

230.    Because Health Professional, American Health, MedSalud, Multimed, and BBB Medical are each health care clinics subject to the Clinic Act: (i) Sarduy and Aportela could not operate Health Professional; (ii) Martinez could not operate American Health; (iii) Rodriguez and Turino could not operate Multimed; (iv) Milian could not operate MedSalud; and (v) Riquenes and Diaz could not operate BBB Medical unless they obtained clinic licenses for their respective clinics, and unless the clinics employed licensed physicians as their respective medical directors, who actually performed the required duties of clinic medical directors.

231.    However, if Sarduy, Aportela, Martinez, Rodriguez, Turino, Milian, Riquenes, and Diaz retained legitimate physicians to serve as the Fernandez Clinics' respective medical directors, any such legitimate physicians actually would be obligated to fulfill the statutory and regulatory requirements applicable to clinic medical directors, which would impede the Defendants' fraudulent schemes.

232.    Accordingly:

(i)      Sarduy and Aportela recruited Fernandez, a licensed physician, who was willing to falsely pose as the legitimate medical director at Health Professional, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director at the clinic.

71

(ii)    Martinez recruited Fernandez, a licensed physician, who was willing to falsely pose as the legitimate medical director at American Health, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director at the clinic.

(iii)   Rodriguez and Turino recruited Fernandez, a licensed physician, who was willing to falsely pose as the legitimate medical director at Multimed, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director at the clinic.

(iv)    Milian recruited Fernandez, a licensed physician, who was willing to falsely pose as the legitimate medical director at MedSalud, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director at the clinic.

(v)     Riquenes and Diaz recruited Fernandez, a licensed physician, who was willing to falsely pose as the legitimate medical director at BBB Medical, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director at the clinic.

233.    Fernandez was never genuinely the medical director of the Fernandez Clinics.

234.    Instead, from the beginning of Fernandez's association with the respective Fernandez Clinics, he ceded all day-to-day decision-making and oversight regarding health care services to Sarduy, Aportela, Martinez, Rodriguez, Turino, Milian, Riquenes, and Diaz, respectively.

235.    In keeping with the fact that Fernandez was never genuine medical director at the Fernandez Clinics, Fernandez never legitimately conducted systematic reviews of each of the Fernandez Clinics' respective billings to ensure that the billings were not fraudulent or unlawful, and instead permitted each of the Fernandez Clinics to operate in the fraudulent and unlawful manner described herein.

236.    What is more, though no Florida health care clinic may operate without the day-to-day supervision of a physician-medical director, Fernandez never provided legitimate, day-to-day supervision at any of the Fernandez Clinics, and – in fact – only occasionally was present at the respective clinics, if at all.

72

237.     For instance, American Health's December 2022 clinic licensing application represented that Fernandez was only present at American Health "8 hours per week."

238.     Likewise, Health Professional's July 2023 clinic licensing application represented that Fernandez was only present at Health Professional "1 X A MONTH TO PERFORM MEDICAL DIRECTOR DUTIES."

239.     MedSalud's May 2024 clinic licensing application also represented that Fernandez was only present at MedSalud "1 X A MONTH TO PERFORM MEDICAL DIRECTOR DUTIES."

240.     Additionally, Multimed's November 2023 clinic licensing application represented that Fernandez was only present at Multimed "at least once a month."

241.     Furthermore, Fernandez did not: (i) develop and implement policies, standards, and procedures to protect the confidentiality and security of the medical records at the respective Fernandez Clinics; or (ii) trained the employees of the respective Fernandez Clinics in any such policies, standards, and procedures, which are among the required statutory duties of clinic medical directors.

242.     In the claims identified in Exhibits "1" - "5", the Defendants falsely represented that the Fernandez Clinics were in compliance with the Clinic Act and eligible to receive PIP reimbursement.

243.     In fact, none of the Fernandez Clinics were in compliance with the Clinic Act, and thus were not eligible to receive PIP reimbursement.

**2.     The Unlawful Operation of Fernandez P.A. in Violation of the Clinic Act**

244.     What is more, Fernandez operated Fernandez P.A. in pervasive violation of the Clinic Act.

73

245. Fernandez P.A. was a "clinic" within the meaning of the Clinic Act, in that it was and entity "where health care services [were] provided to individuals and which tender[ed] charges for reimbursement for services."

246. However, Fernandez P.A. never had a clinic license or a medical director.

247. Instead, Fernandez P.A. was– at all times – owned by Fernandez, and purported to operate under the "wholly owned" exemption from the Clinic Act's licensing, operating, and medical director requirements.

248. However, Fernandez never legitimately supervised the business activities of Fernandez P.A., inasmuch as Fernandez never conducted legitimate reviews of the billing or treatment records from Fernandez P.A. to ensure that the billing was not fraudulent or unlawful, and never even made any attempt to remedy the fraudulent and unlawful charges submitted through Fernandez P.A., as described herein.

249. Indeed, given the fraudulent treatment and billing activities described below – which were pervasive across all of the billing submitted to GEICO through Fernandez P.A. – there is no way that Fernandez could have legitimately supervised the business activities of the practice.

250. Had Fernandez legitimately supervised the business activities of Fernandez P.A., he would not have permitted them to operate in the fraudulent and unlawful manner described herein.

251. Accordingly, Fernandez P.A. never qualified for the "wholly owned" exemption from licensure as a "health care clinic". Nor did Fernandez P.A. qualify for any other exemption to the Clinic Act, or have a medical director and clinic license as required for a health care clinic without an exemption. As a result, Fernandez P.A. operated – at all relevant times – in violation of the Clinic Act.

**III.    The Fraudulent Claims Defendants Submitted to GEICO**

252.    To support their fraudulent charges, the Defendants systematically submitted thousands of HCFA-1500 forms and treatment reports to GEICO seeking payment for the Fraudulent Services for which Defendants were not entitled to receive payment.

253.    The claims that Defendants submitted or caused to be submitted to GEICO were false and misleading in the following, material respects:

(i)    The HCFA-1500 forms and treatment reports submitted by the Defendants misrepresented to GEICO that Defendants were in compliance with Florida law, and therefore were eligible to collect PIP Benefits in the first instance. In fact, the Defendants never were in compliance with Florida law, and never were eligible to collect PIP Benefits, because of the fraudulent and unlawful scheme described herein.

(ii)    The HCFA-1500 forms and treatment reports submitted by the Defendants misrepresented to GEICO that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement. In fact, the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement.

(iii)    The HCFA-1500 forms and treatment reports submitted by the Defendants misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed to financially enrich Defendants, not to provide medically necessary treatment to the Insureds.

(iv)    The HCFA-1500 forms and treatment reports submitted by and on behalf of Defendants misrepresented and exaggerated the nature, extent, and results of the Fraudulent Services that purportedly were provided.

**IV.    The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance**

254.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO.

255. To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, the Defendants systemically concealed their fraud and went to great lengths to accomplish this concealment.

256. For instance, the Defendants knowingly misrepresented and concealed facts in an effort to prevent discovery that the Defendants operated in violation of Florida law and were, therefore, ineligible to collect PIP Benefits in the first instance.

257. The Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically unnecessary, and frequently were never performed in the first instance.

258. The Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were oftentimes unlawfully performed by massage therapists and unlicensed/unsupervised individuals, and unlawfully billed to GEICO.

259. The Defendants have hired law firms to pursue collection of the fraudulent charges for the Fraudulent Services from GEICO and other insurers if the charges were not promptly paid in full.

260. GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to – and did – cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $2,900,000.00.

261. Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover – and could not reasonably have discovered – that its damages were attributable to fraud until shortly before it filed this Complaint.

## FIRST CAUSE OF ACTION
### Against Health Professional
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

262. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

263. There is an actual case in controversy between GEICO and Health Professional regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

264. Health Professional has no right to receive payment for any pending bills submitted to GEICO because it unlawfully was operated in violation of Florida law.

265. Health Professional has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided and billed to GEICO.

266. Health Professional has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

267. Health Professional has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

268. Health Professional has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

269. Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Health Professional has no right to receive payment for any pending bills submitted to GEICO.

**SECOND CAUSE OF ACTION**
**Against Sarduy and Aportela**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

270. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

271. Health Professional is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

272. Sarduy and Aportela knowingly have conducted and/or participated, directly or indirectly, in the conduct of the Health Professional's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Health Professional was not eligible to receive under the No-Fault Law because: (i) Health Professional unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

273.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "1".

274.    Health Professional's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Sarduy and Aportela operated Health Professional, inasmuch as Health Professional was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for Health Professional to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Health Professional to the present day.

275.    Health Professional is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Health Professional in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

276.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,130,000.00 pursuant to the fraudulent bills submitted through Health Professional.

277.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Against Sarduy, Aportela, Fernandez, and Fernandez P.A.**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

278.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

279.    Health Professional is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

280.    Sarduy, Aportela, Fernandez, and Fernandez P.A. knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Health Professional's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Health Professional was not entitled to receive under the No-Fault Law because: (i) Health Professional unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

281.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through

80

the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

282.    Health Professional's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Sarduy and Aportela have operated Health Professional, inasmuch as Health Professional is not engaged in a legitimate health care practice, and acts of mail fraud therefore are essential in order for Health Professional to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to submit fraudulent billing to GEICO, and continue to attempt collection on the fraudulent billing submitted through Health Professional to the present day.

283.    Health Professional is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Health Professional in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

284.    Sarduy, Aportela, Fernandez, and Fernandez P.A. knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

285.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,130,000.00 pursuant to the fraudulent bills submitted through Health Professional.

286.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Against Health Professional, Sarduy, Aportela, and Fernandez**
**(Common Law Fraud)**

287.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

288.   Health Professional, Sarduy, Aportela, and Fernandez intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Health Professional for the Fraudulent Services.

289.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Health Professional was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact Health Professional never was in compliance with Florida law, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

290.   Health Professional, Sarduy, Aportela, and Fernandez intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort

to induce GEICO to pay charges submitted through Health Professional that were not reimbursable.

291.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,130,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted through Health Professional.

292.    Health Professional, Sarduy, Aportela, and Fernandez's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

293.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**Against Health Professional, Sarduy, Aportela, and Fernandez**
**(Under Fla. Stat. § 501.201 et. seq.)**

294.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

295.    Health Professional, Sarduy, Aportela, and Fernandez are actively engaged in trade and commerce in the State of Florida.

296.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.203. Health Professional, Sarduy, Aportela, and Fernandez engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

297.    The claims and supporting documents submitted to GEICO in connection with the Fraudulent Services were unfair, deceptive, and unconscionable in that they misrepresented: (i)

83

Health Professional's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

298. Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Health Professional, Sarduy, Aportela, and Fernandez has been materially injurious to GEICO and its Insureds.

299. The conduct of Health Professional, Sarduy, Aportela, and Fernandez was the actual and proximate cause of the damages sustained by GEICO.

300. Health Professional, Sarduy, Aportela, and Fernandez's unfair and deceptive acts have caused GEICO to sustain damages of at least $1,130,000.00.

301. By reason of Health Professional, Sarduy, Aportela, and Fernandez's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION
### Against Health Professional, Sarduy, Aportela, and Fernandez
### (Unjust Enrichment)

302. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

303. As set forth above, Health Professional, Sarduy, Aportela, and Fernandez have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

304. When GEICO paid the bills and charges submitted by Sarduy, Aportela, and Fernandez through Health Professional, it reasonably believed that it was legally obligated to make such payments based on Health Professional, Sarduy, Aportela, and Fernandez's improper, unlawful, and/or unjust acts.

305. Health Professional, Sarduy, Aportela, and Fernandez have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Health Professional,

Sarduy, Aportela, and Fernandez voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

306. Health Professional, Sarduy, Aportela, and Fernandez's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

307. By reason of the above, Health Professional, Sarduy, Aportela, and Fernandez have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,130,000.00.

## SEVENTH CAUSE OF ACTION
### Against American Health
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

308. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

309. There is an actual case in controversy between GEICO and American Health regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

310. American Health has no right to receive payment for any pending bills submitted to GEICO because it unlawfully was operated in violation of Florida law.

311. American Health has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided and billed to GEICO.

312. American Health has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

85

313.     American Health has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

314.     American Health has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

315.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that American Health has no right to receive payment for any pending bills submitted to GEICO.

### EIGHTH CAUSE OF ACTION
**Against Martinez**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

316.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

317.     American Health is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

318.     Martinez knowingly has conducted and/or participated, directly or indirectly, in the conduct of the American Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that American Health was not eligible to receive under the No-Fault Law because: (i) American Health unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided

– to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

319. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "2".

320. American Health's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Martinez operated American Health, inasmuch as American Health was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for American Health to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through American Health to the present day.

321. American Health is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by American Health in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

322. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $715,000.00 pursuant to the fraudulent bills submitted through American Health.

323. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**NINTH CAUSE OF ACTION**
**Against Martinez, Fernandez, and Fernandez P.A.**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

324. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

325. American Health is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

326. Martinez, Fernandez, and Fernandez P.A. knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of American Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that American Health was not entitled to receive under the No-Fault Law because: (i) American Health unlawfully was operated in violation of the Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first

instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

327. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

328. American Health's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Martinez has operated American Health, inasmuch as American Health is not engaged in a legitimate health care practice, and acts of mail fraud therefore are essential in order for American Health to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to submit fraudulent billing to GEICO, and continue to attempt collection on the fraudulent billing submitted through American Health to the present day.

329. American Health is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by American Health in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

330. Martinez, Fernandez, and Fernandez P.A. knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

331. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $715,000.00 pursuant to the fraudulent bills submitted through American Health.

332. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**TENTH CAUSE OF ACTION**
**Against American Health, Martinez, and Fernandez**
**(Common Law Fraud)**

333. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

334. American Health, Martinez, and Fernandez intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through American Health for the Fraudulent Services.

335. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that American Health was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact American Health never was in compliance with Florida law, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

90

336. American Health, Martinez, and Fernandez intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through American Health that were not reimbursable.

337. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $715,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted through American Health.

338. American Health, Martinez, and Fernandez's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

339. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
### Against American Health, Martinez, and Fernandez
### (Under Fla. Stat. § 501.201 et. seq.)

340. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

341. American Health, Martinez, and Fernandez are actively engaged in trade and commerce in the State of Florida.

342. GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.203. American Health, Martinez, and Fernandez engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

343. The claims and supporting documents submitted to GEICO in connection with the Fraudulent Services were unfair, deceptive, and unconscionable in that they misrepresented: (i) American Health's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

344. Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of American Health, Martinez, and Fernandez has been materially injurious to GEICO and its Insureds.

345. The conduct of American Health, Martinez, and Fernandez was the actual and proximate cause of the damages sustained by GEICO.

346. American Health, Martinez, and Fernandez's unfair and deceptive acts have caused GEICO to sustain damages of at least $715,000.00.

347. By reason of American Health, Martinez, and Fernandez's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees.

**TWELFTH CAUSE OF ACTION**
**Against American Health, Martinez, and Fernandez**
**(Unjust Enrichment)**

348. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

349. As set forth above, American Health, Martinez, and Fernandez have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

350. When GEICO paid the bills and charges submitted by Martinez and Fernandez through American Health, it reasonably believed that it was legally obligated to make such payments based on American Health, Martinez, and Fernandez's improper, unlawful, and/or unjust acts.

351. American Health, Martinez, and Fernandez have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that American Health, Martinez, and Fernandez voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

352. American Health, Martinez, and Fernandez's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

353. By reason of the above, American Health, Martinez, and Fernandez have been unjustly enriched in an amount to be determined at trial, but in no event less than $715,000.00.

**THIRTEENTH CAUSE OF ACTION**
**Against Multimed**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

354. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

355. There is an actual case in controversy between GEICO and Multimed regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

356. Multimed has no right to receive payment for any pending bills submitted to GEICO because it unlawfully was operated in violation of Florida law.

357. Multimed has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided and billed to GEICO.

358. Multimed has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent

protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

359.    Multimed has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

360.    Multimed has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

361.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Multimed has no right to receive payment for any pending bills submitted to GEICO.

### FOURTEENTH CAUSE OF ACTION
**Against Rodriguez and Turino**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

362.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

363.    Multimed is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

364.    Rodriguez and Turino knowingly have conducted and/or participated, directly or indirectly, in the conduct of the Multimed's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Multimed was not eligible to receive under the No-Fault Law because: (i) Multimed unlawfully was operated in violation of the Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to

94

GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

365. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "3".

366. Multimed's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Rodriguez and Turino operated Multimed, inasmuch as Multimed was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for Multimed to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Multimed to the present day.

367. Multimed is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Multimed in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

95

368.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $510,000.00 pursuant to the fraudulent bills submitted through Multimed.

369.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## FIFTEENTH CAUSE OF ACTION
### Against Rodriguez, Turino, Fernandez, and Fernandez P.A.
### (Violation of RICO, 18 U.S.C. § 1962(d))

370.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

371.    Multimed is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

372.    Rodriguez, Turino, Fernandez, and Fernandez P.A. knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Multimed's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Multimed was not entitled to receive under the No-Fault Law because: (i) Multimed unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and

(v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

373. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "3". Each such mailing was made in furtherance of the mail fraud scheme.

374. Multimed's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Rodriguez and Turino has operated Multimed, inasmuch as Multimed is not engaged in a legitimate health care practice, and acts of mail fraud therefore are essential in order for Multimed to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to submit fraudulent billing to GEICO, and continue to attempt collection on the fraudulent billing submitted through Multimed to the present day.

375. Multimed is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Multimed in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

376. Rodriguez, Turino, Fernandez, and Fernandez P.A. knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

377. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $510,000.00 pursuant to the fraudulent bills submitted through Multimed.

378. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**SIXTEENTH CAUSE OF ACTION**
**Against Multimed, Rodriguez, Turino, and Fernandez**
**(Common Law Fraud)**

379. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

380. Multimed, Rodriguez, Turino, and Fernandez intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Multimed for the Fraudulent Services.

381. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Multimed was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact Multimed never was in compliance with Florida law, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

98

382. Multimed, Rodriguez, Turino, and Fernandez intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Multimed that were not reimbursable.

383. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $510,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted through Multimed.

384. Multimed, Rodriguez, Turino, and Fernandez's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

385. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SEVENTEENTH CAUSE OF ACTION**
**Against Multimed, Rodriguez, Turino, and Fernandez**
**(Under Fla. Stat. § 501.201 et. seq.)**

386. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

387. Multimed, Rodriguez, Turino, and Fernandez are actively engaged in trade and commerce in the State of Florida.

388. GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.203. Multimed, Rodriguez, Turino, and Fernandez engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

99

389.     The claims and supporting documents submitted to GEICO in connection with the Fraudulent Services were unfair, deceptive, and unconscionable in that they misrepresented: (i) Multimed's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

390.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Multimed, Rodriguez, Turino, and Fernandez has been materially injurious to GEICO and its Insureds.

391.     The conduct of Multimed, Rodriguez, Turino, and Fernandez was the actual and proximate cause of the damages sustained by GEICO.

392.     Multimed, Rodriguez, Turino, and Fernandez's unfair and deceptive acts have caused GEICO to sustain damages of at least $510,000.00.

393.     By reason of Multimed, Rodriguez, Turino, and Fernandez's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees.

**EIGHTEENTH CAUSE OF ACTION**
**Against Multimed, Rodriguez, Turino, and Fernandez**
**(Unjust Enrichment)**

394.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

395.     As set forth above, Multimed, Rodriguez, Turino, and Fernandez have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

396.     When GEICO paid the bills and charges submitted by Rodriguez, Turino, and Fernandez through Multimed, it reasonably believed that it was legally obligated to make such payments based on Multimed, Rodriguez, Turino, and Fernandez's improper, unlawful, and/or unjust acts.

397.    Multimed, Rodriguez, Turino, and Fernandez have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Multimed, Rodriguez, Turino, and Fernandez voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

398.    Multimed, Rodriguez, Turino, and Fernandez's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

399.    By reason of the above, Multimed, Rodriguez, Turino, and Fernandez have been unjustly enriched in an amount to be determined at trial, but in no event less than $510,000.00.

**NINETEENTH CAUSE OF ACTION**
**Against MedSalud**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

400.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

401.    There is an actual case in controversy between GEICO and MedSalud regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

402.    MedSalud has no right to receive payment for any pending bills submitted to GEICO because it unlawfully was operated in violation of Florida law.

403.    MedSalud has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided and billed to GEICO.

404.    MedSalud has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent

protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

405.    MedSalud has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

406.    MedSalud has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

407.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that MedSalud has no right to receive payment for any pending bills submitted to GEICO.

### TWENTIETH CAUSE OF ACTION
#### Against Milian
#### (Violation of RICO, 18 U.S.C. § 1962(c))

408.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

409.    MedSalud is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

410.    Milian knowingly has conducted and/or participated, directly or indirectly, in the conduct of the MedSalud's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over one year seeking payments that MedSalud was not eligible to receive under the No-Fault Law because: (i) MedSalud unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying

102

Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

411.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "4".

412.    MedSalud's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Milian operated MedSalud, inasmuch as MedSalud was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for MedSalud to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through MedSalud to the present day.

413.    MedSalud is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by MedSalud in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

414. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $215,000.00 pursuant to the fraudulent bills submitted through MedSalud.

415. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## TWENTY-FIRST CAUSE OF ACTION
### Against Milian and Fernandez
### (Violation of RICO, 18 U.S.C. § 1962(d))

416. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

417. MedSalud is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

418. Milian and Fernandez knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of MedSalud's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over one year seeking payments that MedSalud was not entitled to receive under the No-Fault Law because: (i) MedSalud unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying

104

Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

419. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "4". Each such mailing was made in furtherance of the mail fraud scheme.

420. MedSalud's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Milian has operated MedSalud, inasmuch as MedSalud is not engaged in a legitimate health care practice, and acts of mail fraud therefore are essential in order for MedSalud to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to submit fraudulent billing to GEICO, and continue to attempt collection on the fraudulent billing submitted through MedSalud to the present day.

421. MedSalud is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by MedSalud in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

422. Milian and Fernandez knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

423. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $215,000.00 pursuant to the fraudulent bills submitted through MedSalud.

105

424.     By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**TWENTY-SECOND CAUSE OF ACTION**
**Against MedSalud, Milian, and Fernandez**
**(Common Law Fraud)**

425.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

426.     MedSalud, Milian, and Fernandez intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through MedSalud for the Fraudulent Services.

427.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that MedSalud was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact MedSalud never was in compliance with Florida law, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

428.     MedSalud, Milian, and Fernandez intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through MedSalud that were not reimbursable.

106

429.     GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $215,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted through MedSalud.

430.     MedSalud, Milian, and Fernandez's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

431.     Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-THIRD CAUSE OF ACTION
### Against MedSalud, Milian, and Fernandez
### (Under Fla. Stat. § 501.201 et. seq.)

432.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

433.     MedSalud, Milian, and Fernandez are actively engaged in trade and commerce in the State of Florida.

434.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.203. MedSalud, Milian, and Fernandez engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

435.     The claims and supporting documents submitted to GEICO in connection with the Fraudulent Services were unfair, deceptive, and unconscionable in that they misrepresented: (i) MedSalud's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services

107

were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

436.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.   Additionally, the conduct of MedSalud, Milian, and Fernandez has been materially injurious to GEICO and its Insureds.

437.    The conduct of MedSalud, Milian, and Fernandez was the actual and proximate cause of the damages sustained by GEICO.

438.    MedSalud, Milian, and Fernandez's unfair and deceptive acts have caused GEICO to sustain damages of at least $215,000.00.

439.    By reason of MedSalud, Milian, and Fernandez's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees.

**TWENTY-FOURTH CAUSE OF ACTION**
**Against MedSalud, Milian, and Fernandez**
**(Unjust Enrichment)**

440.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

441.    As set forth above, MedSalud, Milian, and Fernandez have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

442.    When GEICO paid the bills and charges submitted by Milian and Fernandez through MedSalud, it reasonably believed that it was legally obligated to make such payments based on MedSalud, Milian, and Fernandez's improper, unlawful, and/or unjust acts.

443.    MedSalud, Milian, and Fernandez have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that MedSalud, Milian, and Fernandez voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

108

444.    MedSalud, Milian, and Fernandez's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

445.    By reason of the above, MedSalud, Milian, and Fernandez have been unjustly enriched in an amount to be determined at trial, but in no event less than $215,000.00.

**TWENTY-FIFTH CAUSE OF ACTION**
**Against BBB Medical**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

446.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

447.    There is an actual case in controversy between GEICO and BBB Medical regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

448.    BBB Medical has no right to receive payment for any pending bills submitted to GEICO because it unlawfully was operated in violation of Florida law.

449.    BBB Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided and billed to GEICO.

450.    BBB Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

451.    BBB Medical has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

109

452.    BBB Medical has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

453.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that BBB Medical has no right to receive payment for any pending bills submitted to GEICO.

## TWENTY-SIXTH CAUSE OF ACTION
### Against Riquenes and Diaz
### (Violation of RICO, 18 U.S.C. § 1962(c))

454.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

455.    BBB Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

456.    Riquenes and Diaz knowingly have conducted and/or participated, directly or indirectly, in the conduct of the BBB Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that BBB Medical was not eligible to receive under the No-Fault Law because: (i) BBB Medical unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services

110

never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

457.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "5".

458.    BBB Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Riquenes and Diaz operated BBB Medical, inasmuch as BBB Medical was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for BBB Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through BBB Medical to the present day.

459.    BBB Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by BBB Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

460.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $235,000.00 pursuant to the fraudulent bills submitted through BBB Medical.

461.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

111

**TWENTY-SEVENTH CAUSE OF ACTION**
**Against Riquenes, Diaz, and Fernandez**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

462.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

463.    BBB Medical is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

464.    Riquenes, Diaz, and Fernandez knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of BBB Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that BBB Medical was not entitled to receive under the No-Fault Law because: (i) BBB Medical unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

465.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "5". Each such mailing was made in furtherance of the mail fraud scheme.

112

466.    BBB Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Riquenes and Diaz has operated BBB Medical, inasmuch as BBB Medical is not engaged in a legitimate health care practice, and acts of mail fraud therefore are essential in order for BBB Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to submit fraudulent billing to GEICO, and continue to attempt collection on the fraudulent billing submitted through BBB Medical to the present day.

467.    BBB Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by BBB Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

468.    Riquenes, Diaz, and Fernandez knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

469.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $235,000.00 pursuant to the fraudulent bills submitted through BBB Medical.

470.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**TWENTY-EIGHTH CAUSE OF ACTION**
**Against BBB Medical, Riquenes, Diaz, and Fernandez**
**(Common Law Fraud)**

471. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

472. BBB Medical, Riquenes, Diaz, and Fernandez intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through BBB Medical for the Fraudulent Services.

473. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that BBB Medical was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact BBB Medical never was in compliance with Florida law, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

474. BBB Medical, Riquenes, Diaz, and Fernandez intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through BBB Medical that were not reimbursable.

475. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by

114

reason of the above-described conduct in that it has paid at least $235,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted through BBB Medical.

476. BBB Medical, Riquenes, Diaz, and Fernandez's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

477. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TWENTY-NINTH CAUSE OF ACTION**
**Against BBB Medical, Riquenes, Diaz, and Fernandez**
**(Under Fla. Stat. § 501.201 et. seq.)**

478. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

479. BBB Medical, Riquenes, Diaz, and Fernandez are actively engaged in trade and commerce in the State of Florida.

480. GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.203. BBB Medical, Riquenes, Diaz, and Fernandez engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

481. The claims and supporting documents submitted to GEICO in connection with the Fraudulent Services were unfair, deceptive, and unconscionable in that they misrepresented: (i) BBB Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

482. Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of BBB Medical, Riquenes, Diaz, and Fernandez has been materially injurious to GEICO and its Insureds.

483. The conduct of BBB Medical, Riquenes, Diaz, and Fernandez was the actual and proximate cause of the damages sustained by GEICO.

484. BBB Medical, Riquenes, Diaz, and Fernandez's unfair and deceptive acts have caused GEICO to sustain damages of at least $235,000.00.

485. By reason of BBB Medical, Riquenes, Diaz, and Fernandez's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees.

## THIRTIETH CAUSE OF ACTION
### Against BBB Medical, Riquenes, Diaz, and Fernandez
### (Unjust Enrichment)

486. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

487. As set forth above, BBB Medical, Riquenes, Diaz, and Fernandez have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

488. When GEICO paid the bills and charges submitted by Milian and Fernandez through BBB Medical, it reasonably believed that it was legally obligated to make such payments based on BBB Medical, Riquenes, Diaz, and Fernandez's improper, unlawful, and/or unjust acts.

489. BBB Medical, Riquenes, Diaz, and Fernandez have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that BBB Medical, Riquenes, Diaz, and Fernandez voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

490. BBB Medical, Riquenes, Diaz, and Fernandez's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

116

491.    By reason of the above, BBB Medical, Riquenes, Diaz, and Fernandez have been unjustly enriched in an amount to be determined at trial, but in no event less than $235,000.00.

## THIRTY-FIRST CAUSE OF ACTION
### Against Fernandez P.A.
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

492.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

493.    There is an actual case in controversy between GEICO and Fernandez P.A. regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

494.    Fernandez P.A. has no right to receive payment for any pending bills submitted to GEICO because it unlawfully was operated in violation of Florida law.

495.    Fernandez P.A. has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided and billed to GEICO.

496.    Fernandez P.A. has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

497.    Fernandez P.A. has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

498.    Fernandez P.A. has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and

117

exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

499. Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Fernandez P.A. has no right to receive payment for any pending bills submitted to GEICO.

**THIRTY-SECOND CAUSE OF ACTION**
**Against Fernandez**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

500. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

501. Fernandez P.A. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

502. Fernandez knowingly has conducted and/or participated, directly or indirectly, in the conduct of the Fernandez P.A.'s affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Fernandez P.A. was not eligible to receive under the No-Fault Law because: (i) Fernandez P.A. unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services

118

misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

503. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "6".

504. Fernandez P.A.'s business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Fernandez operated Fernandez P.A., inasmuch as Fernandez P.A. was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for Fernandez P.A.to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Fernandez P.A. to the present day.

505. Fernandez P.A. is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Fernandez P.A. in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

506. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $180,000.00 pursuant to the fraudulent bills submitted through Fernandez P.A.

507. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

119

**THIRTY-THIRD CAUSE OF ACTION**
**Against Fernandez, Health Professional, Sarduy, Aportela, American Health, Martinez,**
**Multimed, Rodriguez, and Turino**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

508.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-261, above.

509.    Fernandez P.A. is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

510.    Fernandez, Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, and Turino knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Fernandez P.A.'s affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Fernandez P.A. was not entitled to receive under the No-Fault Law because: (i) Fernandez P.A. unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

511.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through

120

the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "6". Each such mailing was made in furtherance of the mail fraud scheme.

512. Fernandez P.A.'s business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Fernandez has operated Fernandez P.A., inasmuch as Fernandez P.A. is not engaged in a legitimate health care practice, and acts of mail fraud therefore are essential in order for Fernandez P.A. to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to submit fraudulent billing to GEICO, and continue to attempt collection on the fraudulent billing submitted through Fernandez P.A. to the present day.

513. Fernandez P.A. is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Fernandez P.A. in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

514. Fernandez, Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, and Turino knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

515. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $180,000.00 pursuant to the fraudulent bills submitted through Fernandez P.A.

516. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**THIRTY-FOURTH CAUSE OF ACTION**
**Against Fernandez P.A. and Fernandez**
**(Common Law Fraud)**

517.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

518.    Fernandez P.A. and Fernandez intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Fernandez P.A. for the Fraudulent Services.

519.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Fernandez P.A. was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact Fernandez P.A. never was in compliance with Florida law, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

520.    Fernandez P.A. and Fernandez intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Fernandez P.A. that were not reimbursable.

521.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by

122

reason of the above-described conduct in that it has paid at least $180,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted through Fernandez P.A..

522. Fernandez P.A. and Fernandez's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

523. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## THIRTY-FIFTH CAUSE OF ACTION
### Against Fernandez P.A. and Fernandez
### (Under Fla. Stat. § 501.201 et. seq.)

524. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

525. Fernandez P.A. and Fernandez are actively engaged in trade and commerce in the State of Florida.

526. GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.203. Fernandez P.A. and Fernandez engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

527. The claims and supporting documents submitted to GEICO in connection with the Fraudulent Services were unfair, deceptive, and unconscionable in that they misrepresented: (i) Fernandez P.A.'s eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

123

528.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Fernandez P.A. and Fernandez has been materially injurious to GEICO and its Insureds.

529.     The conduct of Fernandez P.A. and Fernandez was the actual and proximate cause of the damages sustained by GEICO.

530.     Fernandez P.A. and Fernandez's unfair and deceptive acts have caused GEICO to sustain damages of at least $180,000.00.

531.     By reason of Fernandez P.A. and Fernandez's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees.

## THIRTY-SIXTH CAUSE OF ACTION
### Against Fernandez P.A. and Fernandez
### (Unjust Enrichment)

532.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-261, above.

533.     As set forth above, Fernandez P.A. and Fernandez have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

534.     When GEICO paid the bills and charges submitted by Milian and Fernandez through Fernandez P.A., it reasonably believed that it was legally obligated to make such payments based on Fernandez P.A. and Fernandez's improper, unlawful, and/or unjust acts.

535.     Fernandez P.A. and Fernandez have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Fernandez P.A. Fernandez voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

536.     Fernandez P.A. and Fernandez's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

124

537.     By reason of the above, Fernandez P.A. and Fernandez have been unjustly enriched in an amount to be determined at trial, but in no event less than 180,000.00.

## JURY DEMAND

538.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

a.      On the First Cause of Action against Health Professional, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Health Professional has no right to receive payment for any pending bills submitted to GEICO;

b.      On the Second Cause of Action against Sarduy and Aportela compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,130,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

c.      On the Third Cause of Action against Sarduy, Aportela, Fernandez, and Fernandez P.A., compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,130,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

d.      On the Fourth Cause of Action against Health Professional, Sarduy, Aportela, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $1,130,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

e.      On the Fifth Cause of Action against Health Professional, Sarduy, Aportela, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of

125

$1,130,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2);

f.      On the Sixth Cause of Action against Health Professional, Sarduy, Aportela, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $1,130,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

g.      On the Seventh Cause of Action against American Health, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that American Health has no right to receive payment for any pending bills submitted to GEICO;

h.      On the Eighth Cause of Action against Martinez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $715,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

i.      On the Ninth Cause of Action against Sarduy, Aportela, Fernandez, and Fernandez P.A., compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $715,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

j.      On the Tenth Cause of Action against American Health, Martinez, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $715,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

k.      On the Eleventh Cause of Action against American Health, Martinez, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $715,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2);

126

l.      On the Twelfth Cause of Action against American Health, Martinez, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $715,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

m.      On the Thirteenth Cause of Action against Multimed, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Multimed has no right to receive payment for any pending bills submitted to GEICO;

n.      On the Fourteenth Cause of Action against Rodriguez and Turino, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $510,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

o.      On the Fifteenth Cause of Action against Rodriguez, Turino, Fernandez, and Fernandez P.A., compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $510,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

p.      On the Sixteenth Cause of Action against Multimed, Rodriguez, Turino, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $510,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

q.      On the Seventeenth Cause of Action against Multimed, Rodriguez, Turino, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $510,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2);

r.      On the Eighteenth Cause of Action against Multimed, Rodriguez, Turino, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of

$510,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

s.      On the Nineteenth Cause of Action against MedSalud, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that MedSalud has no right to receive payment for any pending bills submitted to GEICO;

t.      On the Twentieth Cause of Action against Milian, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $215,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

u.      On the Twenty-First Cause of Action against Milian and Fernandez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $215,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

v.      On the Twenty-Second Cause of Action against MedSalud, Milian, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $215,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

w.      On the Twenty-Third Cause of Action against MedSalud, Milian, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $215,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2);

x.      On the Twenty-Fourth Cause of Action against MedSalud, Milian, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $215,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

y.       On the Twenty-Fifth Cause of Action against BBB Medical, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that BBB Medical has no right to receive payment for any pending bills submitted to GEICO;

z.       On the Twenty-Sixth Cause of Action against Riquenes and Diaz, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $235,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

aa.      On the Twenty-Seventh Cause of Action against Riquenes, Diaz, and Fernandez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $235,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

bb.      On the Twenty-Eighth Cause of Action against BBB Medical, Riquenes, Diaz, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $235,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

cc.      On the Twenty-Ninth Cause of Action against BBB Medical, Riquenes, Diaz, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $235,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2);

dd.      On the Thirtieth Cause of Action against BBB Medical, Riquenes, Diaz, and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $235,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

ee.     On the Thirty-First Cause of Action against Fernandez P.A., a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Fernandez P.A. has no right to receive payment for any pending bills submitted to GEICO;

ff.     On the Thirty-Second Cause of Action against Fernandez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $180,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

gg.     On the Thirty-Third Cause of Action against Fernandez, Health Professional, Sarduy, Aportela, American Health, Martinez, Multimed, Rodriguez, and Turino, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $180,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

hh.     On the Thirty-Fourth Cause of Action against Fernandez P.A. and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $180,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

ii.     On the Thirty-Fifth Cause of Action against Fernandez P.A. and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $180,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2); and

jj.     On the Thirty-Sixth Cause of Action against Fernandez P.A. and Fernandez, compensatory damages in an amount to be determined at trial but in excess of $180,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper.

130

Dated: January 13, 2026

/s/ Max Gershenoff
Max Gershenoff (FBN 1038855)
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen L. Wenger (FBN 92136)
Peter Henninger (FBN 1070471)
RIVKIN RADLER, LLP
1301 Riverplace Blvd., Suite 1000
Jacksonville, Florida 32207
-and-
926 RXR Plaza
Uniondale, NY 11556-0926
Phone: (904) 791-8948
Facsimile: (904) 598-6225
Max.Gershenoff@rivkin.com
John.Marino@rivkin.com
Lindsey.Trowell@rivkin.com
Kristen.Wenger@rivkin.com
Peter.Henninger@rivkin.com
*Counsel for Plaintiffs*